[S. F. No. 18448. In Bank. Mar. 25, 1952.]

BETTY F. LERNER, Petitioner, v. SUPERIOR COURT OF SAN MATEO COUNTY, Respondent; CLARENCE F. LERNER, Real Party in Interest.

Marvin E. Lewis, Goldstein, Lewis & Barceloux for Petitioner.

Cosgriff, Carr, McClellan & Ingersoll and Frank V. Kington for Real Party in Interest and Respondent.

TRAYNOR, J.—During their marriage, Clarence and Betty Lerner adopted two children, Gerald and Linda. The marriage failed, and a final decree of divorce was entered on May 10, 1948. The decree awarded legal custody of the children to Clarence and Betty jointly, and physical custody to Betty for the greater part of each year. No appeal was taken from the final decree. On May 25, 1950, both parties consented to an order modifying the custody provisions of the final divorce decree to allow Gerald to attend the Menlo School for Boys as a full-time student.

On March 9, 1951, after application by Clarence, the final decree was modified to award custody of Gerald to his father, subject to the condition that the boy ''be kept enrolled in school as at present.'' Betty promptly appealed from the March 9th order and her appeal is presently pending before this court.

On July 16, 1951, Clarence served notice that he would seek an order from the trial court authorizing him to enter Gerald as a student in the Oxford Academy of Individual Education, Pleasantville, New Jersey. Court permission for removal of the boy was necessary because the March 9th order granting custody to Clarence was conditional on Gerald's attendance at the Menlo School. The motive for Clarence's action is in dispute. Clarence alleges that Gerald cannot adjust himself to class instruction and requires individual education, that the Menlo School refused to accept him for another term,[*] that educational authorities and a child psychiatrist recommended enrollment in the Oxford Academy, and that it will cost Clarence approximately $10,000 annually to send the boy to the New Jersey school. Betty asserts, however, that Gerald is a bright normal boy, that educational authorities inform her that it is not only unnecessary but would

[*]Pending determination of the prohibition proceeding, however, the Menlo School has accepted the boy.

be harmful for Gerald to attend the Oxford Academy, and that the real motive for the boy's removal to New Jersey is to transfer him 3,000 miles from Betty.

On July 23, 1951, at the hearing on Clarence's motion, Betty advised the trial court that the filing of the appeal from the March 9th custody order had deprived the trial court of jurisdiction to make further modifications of the custody provisions of the final divorce decree. Nevertheless, the trial court took the testimony of several witnesses in support of Clarence's motion. Betty then filed an application with this court for a writ of prohibition and, after transfer of the petition to the District Court of Appeal, the alternative writ issued on August 10th, and it is still in force.

### Trial Court Jurisdiction Pending Appeal

The first question to be determined is whether the trial court had jurisdiction to enter any order allowing Gerald to leave the state pending appeal from the March 9th custody order.

Section 946 of the Code of Civil Procedure provides: "Whenever an appeal is perfected, as provided in the preceding sections of this chapter, it stays all further proceedings in the court below upon the judgment or order appealed from, or upon the matters embraced therein. . . ." It is therefore well established that an appeal from a custody order deprives the trial court of jurisdiction to change the custody status at the time of the appeal. (*Vosburg* v. *Vosburg,* 137 Cal. 493, 495 [68 P. 694]; *Ex parte Queirolo,* 119 Cal. 635, 636 [51 P. 956]; *Browne* v. *Browne,* 60 Cal.App.2d 637, 642 [141 P.2d 428]; *Moon* v. *Superior Court,* 59 Cal.App.2d 447, 449 [139 P.2d 84]; *In re Browning,* 108 Cal.App. 503, 506 [291 P. 650]; see 2 Cal.Jur. 416-418; 27 C.J.S., Divorce, § 324f.) "An appeal from a judgment or order would be futile, and this court would be deprived of jurisdiction if pending the appeal the judgment or order appealed from could be modified or changed into something radically different by a subsequent order of the trial court." (*Vosburg* v. *Vosburg, supra,* 137 Cal. 493, 496.) The loss of jurisdiction is so complete that even the consent of the parties is ineffective to reinvest the trial court with jurisdiction over the subject matter of the appeal. (*Kinard* v. *Jordan,* 175 Cal. 13, 16 [164 P. 894].)

Clarence contends that the trial court may nevertheless allow "temporary" removal to New Jersey pending appeal,

relying upon the provision in section 946 that "the court below may proceed upon any other matter embraced in the action and not affected by the order appealed from." Clarence points out that the "order appealed from" is the order of March 9th modifying the final decree by transferring custody of Gerald from Betty to Clarence. He states that his application to enroll the boy in the New Jersey school "has absolutely no relationship" to the custody order, but would merely change the locale of the boy's education from the Menlo School to New Jersey.

The contention that the removal proceeding is not upon a matter embraced within the custody appeal disregards the factual setting of this action. At the time Betty perfected her appeal from the modification order of March 9th, the parents had joint legal custody and Gerald was enrolled full time at Menlo School, where Betty wished him to be educated, where she could visit him, and where she could invoke the protection of California courts to enforce the provisions of the final divorce decree. ■ The essence of custody is the companionship of the child and the right to make decisions regarding his care and control, education, health, and religion. (See *Roche* v. *Roche* 25 Cal.2d 141, 144 [152 P.2d 999].) ■ If the child could be removed 3,000 miles to a school in New Jersey, chosen by Clarence against Betty's will, the provisions of the custody decree favorable to Betty would be vitiated. The proposed New Jersey order, in fact, would be more severe from Betty's viewpoint than the order appealed from. Under the March 9th order Betty lost legal custody, but the court at least ordered that the boy remain at a California school where Betty could visit him. The New Jersey order, by contrast, would effectively end visitation rights. Although the removal is labelled "temporary," it would substantially destroy the custody status at the time the appeal was taken, in clear violation of the provisions of section 946. (*Vosburg* v. *Vosburg, supra,* 137 Cal. 493, 495.) ■ Moreover, an examination of the recognition given custody decrees in other states demonstrates that the phrase in section 946, "all further proceedings in the court below upon the judgment or order appealed from," must be interpreted to include action by a trial court giving "temporary" permission to take a child from the state pending appeal from a custody order. ■ Although it may be assumed that the California decree would receive the same respect in other states that foreign custody decrees receive in our courts (see

*Sampsell* v. *Superior Court*, 32 Cal.2d 763, 779 [197 P.2d 739]), the physical presence of the child would give the foreign state jurisdiction to decide for itself what action would be in his best interests. (*Sampsell* v. *Superior Court, supra,* 32 Cal.2d 763, 779; *Foster* v. *Foster*, 8 Cal.2d 719, 726 [68 P.2d 719]; *Titcomb* v. *Superior Court*, 220 Cal. 34, 39 [29 P.2d 206]; see *In re B's Settlement*, 1 Ch. 54 (1940); 160 A.L.R. 408; 17 Am.Jur. 521.) ▐ Custody decrees are universally subject to modification upon a showing of facts that require a change in the order to protect what the foreign court considers the welfare of the child. Even if the foreign forum eventually follows the California decision, protracted litigation is meanwhile inevitable. Thus, in the Foster proceedings the South Dakota decree was eventually enforced in this state, but only after the parent disobeying the South Dakota decree kept the children in this state for three years of trial and appellate litigation. (See *Foster* v. *Foster*, 8 Cal.2d 719 [68 P.2d 719]; *Foster* v. *Foster*, 5 Cal.2d 669 [55 P.2d 1175]; *Foster* v. *Superior Court*, 4 Cal.2d 125 [47 P.2d 701]; *Foster* v. *Superior Court*, 4 Cal.App.2d 466 [41 P.2d 187].) Again, in *Langan* v. *Langan*, 150 F.2d 979, the father disregarded the provisions of a California decree and fled with the child to Maryland. The mother followed him and was awarded custody by the Maryland court but the father moved on to the District of Columbia before the mother could obtain physical custody of the child. Despite the conduct of the father, the District of Columbia court awarded custody to the father on the ground of changed circumstances. The father thus shopped from state to state until he found a court willing to award him custody. There are many other instances where parents violated court orders forbidding removal of a minor from the state with impunity. (See *In re Memmi*, 80 Cal.App. 2d 295, 300 [181 P.2d 885]; *Cook* v. *Cook*, 135 F.2d 945, 946; *Gaunt* v. *Gaunt*, 160 Okla. 195, 196 [16 P.2d 579]; *Crowell* v. *Crowell*, 184 Ore. 467, 472 [198 P.2d 992]; *Haynie* v. *Hudgins*, 122 Miss. 838, 853 [85 So. 99]; *White* v. *White*, 77 N.H. 26, 30 [86 A. 353]; *Commonwealth ex rel. Rogers* v. *Daven*, 298 Pa. 416, 423 [148 A. 524]; *Goldsmith* v. *Salkey*, 131 Tex. 139, 146 [112 S.W.2d 165, 116 A.L.R. 1293]; *Jones* v. *Bowman*, 13 Wyo. 79, 89 [77 P. 439]; *People ex rel. Wagner* v. *Torrence*, 94 Colo. 47, 51 [27 P.2d 1038]; *Helton* v. *Crawley*, 241 Iowa 296 [41 N.W.2d 60]; *Ex parte Peddicord*, 269 Mich. 142, 145 [256 N.W. 833].) We do not mean to imply that the foregoing decisions were incorrectly decided. They

are cited only to demonstrate that Betty cannot be adequately protected during her appeal if the trial court may enter orders allowing her child to be taken from the state.

■ Clarence contends that the trial court "has power to make all necessary orders needed for the child's welfare and is not to be blocked by an appeal based on mere partisan interest and desire." This contention assumes the question to be decided by the appeal: did the trial court correctly decide that the status of the child's custody as of March 9th was not in his best interests? The paramount concern in custody proceedings is the walfare of the child (*Puckett* v. *Puckett,* 21 Cal.2d 833, 839 [136 P.2d 1]), but Betty has the right and duty to safeguard Gerald until determination of the appeal. Clarence asserts that the best interests of Gerald require his attendance at the New Jersey school, but Betty does not agree and, until custody is taken from her and the order affirmed on appeal, questions of the child's education are governed by provisions of the final divorce decree as modified by the consent order. It may be noted that if extraordinary circumstances requiring protection of the child during the appeal arise, application may be made to the appellate court for appropriate relief. (See *Gantner* v. *Gantner, post,* p. 691 [242 P.2d 329].)

■ Clarence invokes decisions to the effect that pending appeal a trial court has jurisdiction to require a father to make payments for child support. (Civ. Code, § 137.2; *Dixon* v. *Dixon,* 216 Cal. 443, 444 [14 P.2d 498].) The fact that a trial court has the power to protect the child during the appeal by continuing the natural obligation of a father to support his child does not mean that it has the power to issue orders that would render futile the appellate determination on the merits. (*Vosburg* v. *Vosburg,* 137 Cal. 493, 496 [68 P. 694].)

■ Clarence next contends that any order affecting Gerald's education is not a matter embraced in the appeal from the March 9th order, on the ground that Betty consented to the Menlo School provision in the final decree and a consent order cannot be appealed. (See cases collected in 2 Cal.Jur. 225.) The record does not indicate that the May 25th consent, as adopted in the March 9th decree, waived Betty's rights of physical custody for more than one semester, and there is nothing to show that Betty ever consented at any time that the child could be enrolled in any school other than the Menlo School. In any event, Betty has filed a valid appeal from that part of the March 9th order awarding custody to Clarence,

and that appeal would be undermined by an order allowing the child to be taken from the state.

Clarence contends that the appeal did not operate to stay the New Jersey order on the ground that Betty had voluntarily delivered the boy to the Menlo School before perfecting her appeal. Clarence relies on *In re McKean*, 82 Cal. App. 580, 584 [256 P. 226], where the mother did not appeal until after execution of the order appealed from, which required her to give up custody to the father. The court properly refused to issue habeas corpus to return the child to the mother, on the ground that under section 946 the appeal stayed only future action by the trial court and did not undo action taken by the parties before the appeal. *In re Siddall*, 143 Cal. 313, 315 [76 P. 1115] ; see *In re Browning*, 108 Cal. App. 503, 507 [291 P. 650].) The McKean decision is inapplicable here, since Betty enrolled the boy in the Menlo School pursuant to the May 25th modification of the final decree, and not in obedience to the March 9th decree, the subject of the present appeal.

A litigant in a custody action is entitled to appellate review before his rights are finally determined. If the appellant is not protected from adverse action by the trial court that would destroy the fruits of his appeal, the right of appeal is illusory. In contending that the trial court can permit removal of the children pending appeal, Clarence in effect contends that custody orders should be immediately executed and not stayed by appeal. The statutes and decisions of this state are opposed to this contention, although some states have a contrary rule. (See *Scheffers* v. *Scheffers*, 241 Iowa 1217 [44 N.W.2d 676, 679].)

In summary, at the time Betty perfected her appeal, she had custody of Gerald under a decree providing that the boy should attend the Menlo School. An order which so disturbs the custody of the child as to permit him to be taken out of this state, pending final determination of the appeal, would be an act in excess of the jurisdiction of the trial court. (*Vosburg* v. *Vosburg, supra*; see *State ex rel. Cash* v. *District Court*, 58 Mont. 316, 318 [195 P. 549] ; *Nolan* v. *Nolan*, 257 Ill.App. 401, 403 ; cases collected in 163 A.L.R. 1320 ; 3 Am.Jur. 192 ; 27 C.J.S., Divorce, § 324f.) The writ of prohibition may therefore issue to prevent the trial court from entering the New Jersey order. (*Foster* v. *Superior Court*, 4 Cal.2d 125, 127 [47 P.2d 701].)

## Motion for Attorney Fees and Costs

On September 14, 1951, Betty applied to the District Court of Appeal for attorney fees and costs incurred in the prohibition proceeding. The application will be considered as addressed to this court after the hearing was granted following the District Court decision. Betty alleges that she does not have the financial resources to prosecute the prohibition proceeding, that Clarence has a financial worth of $1,000,000, and that he has a yearly income of $100,000.

The petition for a writ of prohibition was filed July 31, 1951, and the alternative writ issued on August 10, 1951. Insofar as the present application is for counsel fees for services performed before September 14th, the date of the application, the motion must be denied. (*Warner* v. *Warner,* 34 Cal.2d 838, 840 [215 P.2d 20].) The application for services after that date, however, may be granted if the statute governing allowance of attorney fees applies to original proceedings in prohibition.

Civil Code, section 137.3, enacted in 1951, provides that, "during the pendency of any action for divorce . . . the court may order the husband . . . to pay such amount as may be reasonably necessary for the cost of maintaining or defending the action and for attorney's fees." Section 137.3 is a recodification of the first sentence of former Civil Code, section 137. It was settled under section 137 that the phrase therein, "when an action for divorce is pending," embraced many diverse proceedings growing out of the divorce action and arising after entry of the final decree. (*Wilson* v. *Wilson,* 33 Cal.2d 107, 115 [199 P.2d 671] (proceeding to enforce distribution of community property); *Reynolds* v. *Reynolds,* 21 Cal.2d 580, 585 [134 P.2d 251] (modification of allowance for child support); *Lamborn* v. *Lamborn,* 190 Cal. 794, 796 [214 P. 862] (motion to modify alimony); *Grannis* v. *Superior Court,* 143 Cal. 630, 633 [77 P. 647] (motion to set aside final decree under Code Civ. Proc., § 473); *Kohn* v. *Kohn,* 95 Cal. App.2d 722, 724 [214 P.2d 80] (construction of property settlement); *Parker* v. *Parker,* 22 Cal.App.2d 139, 142 [70 P.2d 1003] (mandamus to enter judgment for delinquent alimony); *Moore* v. *Gosbey,* 130 Cal.App. 70, 73 [19 P.2d 995] (motion to modify alimony, made 10 years after final decree]; see cases collected in 15 A.L.R.2d 1270.)

On principle ,there is no difference between actions in which a woman is compelled by her former husband to resist by an appeal a proceeding brought by him to modify a custody or

alimony award and actions in which she is compelled to seek prohibition to prevent improper modification of such awards. In either case she may be unable to retain counsel to represent her, and the policy underlying section 137.3 and the cases above cited are controlling.

In maintaining that section 137.3 does not apply to prohibition proceedings, Clarence first contends that Betty can recover suit money only when he is the other party to the litigation, and that here the respondent is the superior court. The statute does not support this contention. Section 137.3 is not framed to limit its application to actions in which the other spouse is a "plaintiff" or "defendant." Instead, it applies during the "pendency of any action for divorce" and payments are to be made by the "husband." Moreover, the adverse party in the present proceeding is clearly Clarence, the "real party in interest," and not the superior court, the nominal respondent. The same attorneys represent Clarence and the respondent. The prohibition action is directed against Clarence, since Betty's success would preclude the trial court from making the custody order that he requests. In the early development of the writ of prohibition, it is true, the writ was used by the king's courts to increase their authority at the expense of the ecclesiastical courts (1 Holdsworth, History of English Law, 3d ed., pp. 229, 594) and the lower court was thus a party to the litigation in a substantial sense. In California practice, however, an application to an appellate court for the writ is simply one of several means by which a litigant may obtain a review of action or threatened action by a trial court. (See 36 Cal.L.Rev. 75, 101-105; 23 So.Cal. L.Rev. 530, 533-537.) The objective is the same as in an appeal, to prevent the trial court from taking action favorable to the other party. Thus the Rules on Appeal recognize the adversary character of prohibition proceedings by providing that the petition for the writ must disclose the name of the real party in interest (Rule 56(a)), that points and authorities must be served upon him (Rule 56(b)), and that he may demur or answer to the petition (Rule 56(c)). Further, it is established that counsel fees may be recovered in mandamus proceedings in which the superior court is the nominal respondent. (*Parker* v. *Parker*, 22 Cal.App.2d 139, 142 [70 P.2d 1003].)

Clarence relies on *McCarthy* v. *Superior Court*, 65 Cal.App. 2d 42, 43 [149 P.2d 871], holding that a successful applicant for a writ of prohibition cannot recover costs against the

state under Code of Civil Procedure, section 1095. The Mc-Carthy case would be in point only if Betty attempted to recover counsel fees from the state or the Superior Court. Clarence also invokes *Havemeyer* v. *Superior Court,* 84 Cal. 327, 372 [24 P. 121, 18 Am.St.Rep. 192, 10 L.R.A. 627], which held that the real party in interest should receive notice of the prohibition matter by being served with copies of the petition and being given a reasonable time to appear. The record shows that Clarence received ample notice and filed an answer to the petition. Nothing in the Havemeyer case supports Clarence's assertion that any order requiring him to pay counsel fees would be ''without due process.''

No reason thus appears why the fact that the superior court is the nominal respondent in this proceeding bars an award of attorney fees against the real party in interest under section 137.3.

 Clarence contends finally that the Supreme Court is not the proper forum for this proceeding. This contention must be sustained. Assuming that we have jurisdiction to entertain an application for counsel fees, as a power necessarily incident to our original jurisdiction to issue the writ of prohibition, we should not pass upon an application involving questions of fact on the basis of the printed record and affidavits when a more satisfactory alternative exists.

In *Parker* v. *Parker,* 22 Cal.App.2d 139 [70 P.2d 1003], the trial court awarded the wife counsel fees during the pendency of mandamus proceedings within the original jurisdiction of the District Court of Appeal. This procedure has many advantages. The trial court, with the parties before it for examination, is better qualified than the appellate court to pass on the amount of suit money, if any, that should be awarded. (See *Bobbitt* v. *Bobbitt,* 297 Ky. 28, 29 [178 S.W.2d 986]; *Craig* v. *Craig,* 115 Va. 764, 765 [80 S.E. 507].)

The trial court is not deprived of jurisdiction to award counsel fees because the action is an original proceeding before the appellate court. The decision whether the peremptory writ should issue is only a part of the whole litigation between Clarence and Betty on the custody matter. In an analogous situation of an appeal from a custody or alimony order, the lower court retains power to order payment of counsel fees to enable the wife to prosecute her appeal, and such order is not considered in excess of the trial court's jurisdiction as a ''further proceeding in the court below upon the judgment or order appealed from.'' (Code Civ. Proc.,

§ 946; *Reilly* v. *Reilly*, 60 Cal. 624, 626; *DeLeshe* v. *DeLeshe*, 80 Cal.App.2d 517, 518 [181 P.2d 931].) Like a stay on appeal, the alternative writ protects the moving party and the appellate court by maintaining the status quo pending decision by the appellate court. It does not deprive the trial court of jurisdiction to determine that both litigants are fairly represented.

Under the circumstances of this case, Betty should not be penalized because her application was erroneously made to the appellate court. Accordingly, the denial of her motion for attorney fees will be without prejudice to application to the trial court for attorney fees and costs incurred since the date of the motion, September 14, 1951.

The motion for attorney fees and costs is denied without prejudice. Let the peremptory writ of prohibition issue as prayed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.