[No. B141503. Second Dist., Div. One. May 2, 2001.]

In re the Marriage of LEONARD and ELIZABETH STEWART ARMATO.
LEONARD ARMATO, Appellant, v.
ELIZABETH STEWART, Respondent.

## COUNSEL

Trope and Trope and Thomas Paine Dunlap for Appellant.

Hindin & Abel and Bruce David Abel for Respondent.

## OPINION

**MALLANO, J.**—In this dissolution action, the trial court ordered the husband to pay child support. Sometime later, the wife asked the husband for an increase in child support. They resolved the matter without the involvement of the court. The husband agreed to higher payments. The agreement was reduced to writing, which the husband and wife signed. While the agreement was still in effect, the husband unilaterally stopped making the higher payments and reverted to the previous level of support.

The wife filed a motion in this action to enforce the agreement under Code of Civil Procedure section 664.6, which authorizes a trial court to enforce a settlement agreement signed by the parties during pending litigation. The husband opposed the motion, arguing that, in order to obtain any relief, the wife had to file a separate action for breach of contract. The trial court granted the motion and enforced the agreement. The husband has appealed. We agree with the trial court and affirm.

### BACKGROUND

Appellant Leonard Armato and respondent Elizabeth Stewart are former spouses. On December 30, 1994, their marriage was dissolved by a judgment of dissolution entered in this case. The judgment included provisions obligating Leonard to pay child support for the couple's sons, Anthony Armato, then age six, and Elio Armato, then age four.

More specifically, the judgment required monthly child support in the amount of $4,000 per child from July 1, 1994, through December 31, 1997.

Beginning January 1, 1998, monthly child support increased to $5,000 per child. Payments were to continue "until each child attains the age of nineteen (19) years or attains the age of eighteen (18) years and is not a full-time high school student; or until said child enters into a valid marriage; is on active duty with any of the armed forces of the United States of America; or receives a Declaration of Emancipation under California law, or further order of the court, whichever first occurs."

As stated in the judgment, Leonard and Elizabeth were awarded "shared physical custody of the minor children, [Elizabeth] primary and [Leonard] secondary, pursuant to their present time-sharing arrangement." With respect to custody on holidays, the judgment recited that "[t]he parties shall continue to share custody of the children for all holiday periods equally as they have previously done."

The judgment also provided that "[t]he Court in the pending action has continuing jurisdiction to effectuate the terms of this Judgment . . . . No separate proceedings, partition, or otherwise shall be required."

In 1997, three years after the entry of judgment, Leonard filed an order to show cause re modification of child custody and visitation. The matter was heard in May and June 1997. By order dated December 9, 1997, the trial court increased Leonard's time with the children and imposed a detailed schedule of custody applicable to holidays.

In late 1997 and early 1998, Elizabeth's attorney contemplated filing an order to show cause to obtain an increase in child support. Elizabeth could not afford to pay the boys' school tuition and was already delinquent in that regard. On several occasions, counsel for the respective parties discussed aspects of the case. Meanwhile, Elizabeth and Leonard talked to each other about child support. In March 1998, they reached a voluntary arrangement. Leonard agreed to increase monthly child support from $5,000 per child to $7,500 for a period of two years. After that, Leonard would resume paying $5,000. Elizabeth agreed to take responsibility for meeting all of the boys' needs, including the payment of tuition. Leonard, an attorney himself, reduced the agreement to writing in the form of a letter agreement dated March 5, 1998, which he and Elizabeth signed.

Leonard made the higher support payments from March 1998 until April 1999. On April 21, 1999, he sent Elizabeth a letter, stating that he could no longer afford the increased payments. Leonard attributed the change in his financial situation to an earlier decision in which he had assumed sole liability for one of Elizabeth's business debts, i.e., a failed real estate deal.

As he explained in the letter: "[A]ll the claims in the [real estate] case relate[] to the construction work on the property performed solely by you. . . . I agreed to assume your liabilities in return for your full 'cooperation' throughout the case and based upon your representation that there was little wrong with the construction work performed on the property. Without addressing the fairness of that arrangement, the accuracy of your representation, or the fulfillment of your obligation, suffice it to say that this matter has been and continues to be extremely burdensome to me, both financially and otherwise."

Beginning May 1, 1999, Leonard resumed paying monthly child support of $5,000 per child. In essence, he offset the loss on the real estate deal against the child support payments due under the March 5, 1998 letter agreement.

On January 21, 2000, Elizabeth filed a motion in this action to enforce the March 5, 1998 letter agreement pursuant to section 664.6 of the Code of Civil Procedure. That statute provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. . . ." (Hereafter section 664.6.)

Leonard opposed the motion on the ground that, when the letter agreement was executed, there was no "pending litigation." He asserted that, instead of filing a section 664.6 motion in this action, Elizabeth was required to file a new civil action alleging breach of contract.

The motion was heard on February 16, 2000. After argument from both sides, the trial court granted the motion, stating: "I believe that they were parties to a pending action inasmuch as there was continuing jurisdiction to modify a support order in a family law case. And, therefore, there was a pending action." The trial court instructed Elizabeth's counsel to submit a proposed order.

On March 22, 2000, the trial court entered an order granting Elizabeth's motion to enforce the agreement. Leonard was directed to pay monthly child support of $7,500 per child from March 5, 1998, through February 4, 2000. Thereafter, the payments would revert to $5,000. The order also instructed Elizabeth to take full responsibility for the children's financial needs, including the payment of tuition for school. On May 3, 2000, Leonard filed a timely appeal from the trial court's order.

## DISCUSSION

Because this appeal involves the application of various statutes to undisputed facts, we review the trial court's decision de novo. (*State Farm Mut.*

*Auto. Ins. Co. v. Department of Motor Vehicles* (1997) 53 Cal.App.4th 1076, 1081 [62 Cal.Rptr.2d 178].)

■ " 'The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. . . .' . . . In determining that intent, we first examine the words of the statute itself. . . . Under the so-called 'plain meaning' rule, courts seek to give the words employed by the Legislature their usual and ordinary meaning. . . . However, the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose. . . . If the terms of the statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." (*Bodell Construction Co. v. Trustees of Cal. State University* (1998) 62 Cal.App.4th 1508, 1515-1516 [73 Cal.Rptr.2d 450], citations omitted.)

■ In this case, the dispute rests on the meaning of "pending litigation" as used in section 664.6. Leonard argues that there was no litigation pending when the letter agreement was executed, and, as a result, section 664.6 does not apply. He contends that to enforce the agreement or to recover damages for its breach, Elizabeth had to file a separate civil action for breach of contract. He does not challenge the formation or validity of the agreement, only the manner in which it was enforced. For several reasons, we conclude that the trial court properly enforced the agreement under section 664.6.

## A. Terms of the Judgment

The judgment of dissolution—the source of Leonard's obligation to pay child support—states that "[t]he Court in the pending action has *continuing* jurisdiction to effectuate the terms of this Judgment . . . . *No separate proceedings*, partition, or otherwise *shall be required*." (Italics added.) Thus, the judgment provided that any future child support issues would be decided in this action, not a separate civil suit.

## B. Section 664.6 and Family Law

The use of section 664.6 in conjunction with the Family Code would promote one of the primary goals of family law—the simple and expedient resolution of disputes that arise after the dissolution of marriage.

"Section 664.6 was enacted in 1981. . . . [P]rior to 1981 the Courts of Appeal had expressed conflicting views concerning the proper procedures to enforce settlement agreements in pending litigation.

"Under one line of authority, settlement agreements preceding the enactment of section 664.6 in 1981 could be enforced only by a motion for summary judgment, a separate suit in equity, or an amendment to the pleadings. This became the dominant view. . . . It was based on the theory that nonstatutory motions to enforce settlements were motions based on facts outside the pleadings and, under [the Supreme Court's] decisions . . . had to be treated as motions for summary judgment that could be granted only if all of the papers submitted showed there was no triable issue of fact. . . .

"A second line of authority permitted motions to enforce settlements based on facts outside the pleadings if the fact of settlement and the terms of the settlement were not subject to reasonable dispute. . . . The theory underlying this approach was that the statutory means of enforcing settlements by motions for summary judgment, separate suits in equity, or amendments to pleadings were inadequate, and that a court therefore must have authority to enforce settlements as a means of controlling proceedings before the court and protecting the interest of the parties. . . .

"The conflict was resolved in 1981 when the Legislature enacted section 664.6, which created a *summary, expedited* procedure to enforce settlement agreements when certain requirements that decrease the likelihood of misunderstandings are met." (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 584-585 [41 Cal.Rptr.2d 878, 896 P.2d 171], citations omitted, italics added; see *City of Fresno v. Maroot* (1987) 189 Cal.App.3d 755, 762 [234 Cal.Rptr. 353] ["section 664.6 is an expedient and cost effective means of enforcing a settlement agreement"].)

Similarly, with respect to modifying child support orders, the Legislature, the Judicial Council, and the courts have expressed a preference for simple and expedited proceedings.

"Public policy places a high priority on enforcement of child support awards. The Legislature and the Judicial Council have expressed that policy by creating *simplified* methods for enforcing and modifying support awards. . . .

"That the court may retain jurisdiction to modify or enforce support awards following the final decree of dissolution reinforces the policy of *preserving access to the courts and to modification and enforcement mechanisms.* . . . Furthermore, '[f]lexibility in the administration of judgments which will affect the lives of the parties far into the future, especially after very lengthy marriages, is to be encouraged; in few other fields do the equities scream quite so loudly as they do in family law.' . . .

"Thus, a strong policy favors access to the court in family law matters; the courts must remain open to claims seeking to modify or enforce spousal support or similar awards." (*Chauncey v. Niems* (1986) 182 Cal.App.3d 967, 979 [227 Cal.Rptr. 718], citations omitted, italics added.)

In 1996, the Legislature declared: "There is currently no simple method available to parents to quickly modify their support orders when circumstances warrant a change in the amount of support. [¶] . . . The lack of a simple method for parents to use to modify support orders has led to orders in which the amount of support ordered is inappropriate based on the parents' financial circumstances. [¶] . . . Parents should not have to incur significant costs or experience significant delays in obtaining an appropriate support order. [¶] . . . Therefore, it is the intent of the Legislature that the Judicial Council adopt rules of court and forms for a simplified method to modify support orders. This simplified method should be designed to be used by parents who are not represented by counsel." (Fam. Code, § 3680, added by Stats. 1996, ch. 957, § 5.)

The Judicial Council carried out its legislative mandate by creating a set of forms, two of which are instructional sheets containing procedural information. (See Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2000) ¶¶ 17:425 to 17:429, pp. 17-90.3 to 17-90.5 (rev. # 1, 2000); *id.*, forms 17:B to 17:E, pp. 17-94 to 17-101.) The forms "offer the parent a *simplified* means by which to obtain modification of a support order. The simplified procedures were adopted to create a 'relatively *quick* way to modify child support awards' in a proceeding at which neither party need engage an attorney." (*In re Marriage of Damico* (1994) 7 Cal.4th 673, 692 [29 Cal.Rptr.2d 787, 872 P.2d 126] (dis. opn. of Baxter, J, italics added.).)

In the same vein, the Legislature has "*streamline[d]* the enforcement of child support orders by preventing the parties from raising unrelated claims to reduce or eliminate their support obligations. By prohibiting the consideration of factually or legally unrelated claims, [the Family Code] focuses the attention of the parties and of the court on the most important issue: the financial support of a child." (*Keith G. v. Suzanne H.* (1998) 62 Cal.App.4th 853, 860 [72 Cal.Rptr.2d 525], italics added; see, e.g., Fam. Code, §§ 4940-4946, 4950-4956, 5230-5240, 5251-5272, 5600-5603.)

Several provisions of the Family Code emphasize the value of an effective, expedient resolution of child support issues. For instance, "[a] parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life." (Fam. Code, § 4053, subd. (a).) "Child support orders must ensure that children actually receive

*fair, timely, and sufficient support* reflecting the state's high standard of living and high costs of raising children . . . ." (*Id.*, subd. (*l*), italics added.) In addition, the statewide uniform guideline on child support (*id.*, §§ 4050-4076) "seeks to encourage *fair and efficient settlements* of conflicts between parents and seeks to *minimize the need for litigation*" (*id.*, § 4053, subd. (j), italics added).

Further, while the statutory duty to support a child generally terminates upon the age of majority (see Fam. Code, § 3901, subd. (a)), "[n]othing in [the statute] limits a parent's ability *to agree to provide additional support* or the court's power *to inquire whether an agreement to provide additional support* has been made" (*id.*, subd. (b), italics added).

And, after the entry of a judgment of dissolution, a custodial parent is entitled, upon written request, to an annual declaration of income and expenses from the parent paying child support, regardless of whether a notice of motion or order to show cause has been filed. (See Fam. Code, §§ 3660-3668.) By mandating the production of such information, the Family Code provides the parties with a means to resolve support issues without judicial intervention, permits the parties to reassess on a periodic basis whether a modification is warranted, discourages the filing of meritless claims for a change in support, and encourages the use of voluntary agreements to modify support payments.

Plainly, the need for simplicity and expediency in family law matters suggests that, in a dissolution action, section 664.6 should apply to the parties' signed agreement modifying child support. In this case, for example, Elizabeth's section 664.6 motion was filed on January 21, 2000. The trial court ruled on the motion one month later. No doubt, if Elizabeth had been required to comply with Leonard's proposed procedure—filing a civil action for breach of contract—the dispute would not have been resolved as quickly.

Moreover, if Leonard believed that he could not afford the higher payments required by the letter agreement, he could have filed an order to show cause or a notice of motion, asserting a change of circumstances. (See Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶¶ 17:25 to 17:64.5, 17:360 to 17:410, pp. 17-8 to 17-17, 17-82 to 17-90.2 (rev. # 1, 2000).)

C. *No Offset Against Child Support*

A parent who is ordered to pay child support cannot offset a business debt against that obligation. (See *Williams v. Williams* (1970) 8 Cal.App.3d

636, 639-640 [87 Cal.Rptr. 754]; *In re Marriage of Stutz* (1981) 126 Cal.App.3d 1038, 1041-1042 [179 Cal.Rptr. 312].) "[S]ince a child support obligation runs to the child and not the parent, a debt owed by the custodial parent to the supporting parent generally cannot be offset against child support arrearages." (Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶ 18:40, p. 18-10 (rev. # 1, 2000); see *id.*, ¶ 6:628, p. 6-243 (rev. # 1, 2000).)

As Leonard would have it, Elizabeth's only means of seeking relief for a breach of the letter agreement was to file a new civil action, thereby giving him an opportunity to reduce child support by way of a cross-complaint seeking to recover damages on the real estate deal. (See *Keith G. v. Suzanne H.*, *supra*, 62 Cal.App.4th at pp. 857-861; Fam. Code, §§ 5600-5603.) While we express no view as to whether such a reduction would have been allowed, we conclude that Elizabeth could seek relief in the present action.

" '[W]hen the fact of settlement and the terms thereof are not subject to reasonable dispute, to require a party to bring a separate suit in equity to enforce the agreement . . . would defeat the very purpose [that] the settlement . . . is designed to achieve[, i.e.,] avoiding the time and expense of trial. . . .' " (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 905 [30 Cal.Rptr.2d 265, 872 P.2d 1190].)

By insisting that Elizabeth had to file a separate civil action in which he could have filed a cross-complaint, Leonard hoped to accomplish an end-run around established principles of family law that bar an offset of business debts. For that reason, among others, disputes over the modification of child support should ordinarily be heard in the family law action in which the original support obligation was imposed. (See Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶¶ 17:360 to 17:364, pp. 17-82 to 17-83 (rev. # 1, 2000).)

D.   *Historical Treatment of Support Orders*

In deciding whether the letter agreement was executed during pending litigation, it is helpful to review the history of support orders in California.

For decades, the courts of this state have held that they retain jurisdiction over support orders even after a judgment of dissolution has become final and is no longer appealable. As early as 1920, the Supreme Court stated: "[I]t is certain that the [trial] court may fix a specified sum for the support of the child as a matter of administrative convenience and may vary its amount from time to time in the exercise of its sound discretion." (*R. Sherer & Co.*

*v. Industrial Acc. Com.* (1920) 182 Cal. 488, 490 [188 P. 798] (hereafter *R. Sherer & Co.*).)

In *Lamborn v. Lamborn* (1923) 190 Cal. 794 [214 P. 862], the Supreme Court addressed the question of whether a trial court could enter a support order after a decree of divorce had become final. There, the wife moved for an order of support to cover the attorneys' fees and costs she had incurred in the divorce action. The husband opposed the motion, relying on section 1049 of the Code of Civil Procedure. That statute provides: "An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied."

The husband argued that because the time to appeal the divorce decree had expired in accordance with Code of Civil Procedure section 1049, the trial court had no jurisdiction to entertain the motion for support. The trial court rejected the husband's argument and granted the motion. On appeal, the Supreme Court agreed, stating: "It is true that an *ordinary* action is deemed to be *pending* only until the appeal from the judgment is determined or until the time for an appeal has passed (sec. 1049, Code Civ. Proc.), but this general provision of the statute with reference to ordinary judgments is *modified* in the case of divorce actions by the provisions of the code authorizing the modification of an award for alimony at any time after the final decree is entered." (*Lamborn v. Lamborn, supra,* 190 Cal. at pp. 795-796, italics added, applying former Civ. Code, §§ 137, 139, now Fam. Code, §§ 290, 2030, 3651, 4330, 4336; see Hogoboom & King, Cal. Practice Guide: Family Law, *supra,* ¶¶ 17:90 to 17:102, pp. 17-25 to 17-28.2 (rev. # 1, 2000).)

Although *Lamborn* involved spousal support, the same analysis applies to child support. As with an award of spousal support, a trial court is authorized by the Family Code to modify child support after a judgment of dissolution has been entered. (See Fam. Code, §§ 3603, 3650-3651, 3901, subd. (a); Hogoboom & King, Cal. Practice Guide: Family Law, *supra,* ¶¶ 17:1 to 17:19, pp. 17-1 to 17-7 (rev. # 1, 2000).) Thus, notwithstanding section 1049 of the Code of Civil Procedure, a dissolution action remains pending for purposes of child support. (*Clayton v. Clayton* (1953) 117 Cal.App.2d 7, 12 [254 P.2d 669]; see Fam. Code, § 210 [Code of Civil Procedure and rules governing civil actions apply to family law cases unless Family Code provides applicable procedure or rule].)

In *Jacobs v. Jacobs* (1924) 68 Cal.App. 725 [230 P. 209], the wife moved for an award of attorneys' fees incurred in successfully opposing the husband's motion to modify the decree of divorce. The trial court granted her

motion, and the husband appealed. The Court of Appeal found no error, saying: "The [husband's] only argument . . . is that the [divorce] decree had become final prior to the time the motion [for attorneys' fees] was heard and that there was, therefore, no divorce action *pending*. From this it is argued that the court was without power to award counsel fees to [the wife] . . . . The precise point has been ruled on adversely to [the husband] in *Lamborn v. Lamborn*[*, supra,*] 190 Cal. 794 . . . , where the supreme court held that because of the power to modify orders relating to alimony[,] a divorce case was *deemed to be pending after the time for appeal had expired* so that the court had jurisdiction to allow the wife counsel fees to resist a motion for modification of the alimony order and to prosecute an appeal from an order reducing her alimony." (68 Cal.App. at p. 731, italics added, applying former Civ. Code, § 137, now Fam. Code, § 2030.)

In *Moore v. Superior Court* (1928) 203 Cal. 238 [263 P. 1009], the wife moved for an increase in child support after the entry of a final decree of divorce. The husband made a special appearance, arguing that the trial court had lost personal jurisdiction over him upon the entry of the final decree. The trial court found otherwise and granted the motion. The Supreme Court affirmed, explaining: "[T]he entry of a decree of divorce . . . , in so far as it relates to the custody, care, and maintenance of the minor children of the parties thereto, is *not a finality*, but over whom, during their said minority as well as over their parents, the trial court *retains a continuing jurisdiction* which is as complete as that possessed by it *prior to* the entry of said final decree. . . . 'As it seems to us, the true basis upon which the power to modify the decree . . . rests is that out of the marital relation springs a new relationship, viz., that of parent and child. . . . The courts may decree that the marital tie shall be absolutely severed and the parties be placed, so far as the law is concerned, in the same situation that they occupied prior to the solemnization of the marriage ceremony; but they cannot alter or modify the fact that a father is the parent of his offspring. . . . The court, therefore, acting upon this relationship as one of the things brought to it by the divorce action, has the power *to modify or alter its decree so long as there are minor children under the protection of the court.*' " (*Moore v. Superior Court, supra,* 203 Cal. at pp. 242-243, italics added.)

In *Rosher v. Superior Court* (1937) 9 Cal.2d 556 [71 P.2d 918], a decree of divorce provided that the husband would pay child support while his daughter was a minor (under age 18). By the time the daughter turned 18, the Legislature had raised the age of majority for women to 21. The trial court ordered the husband to continue paying child support for the extended period. The husband refused and was found in contempt. He appealed. The Supreme Court concluded that the finding of contempt was proper, stating:

"It is settled that the power of the court to make and modify orders for the support of minor children . . . is independent of any reservation of authority in the original decree; that proper provision for their support may be made at *any time during the period of minority*; [and] that the propriety of the provision to be made is to be determined in the light of the circumstances existing at the time the application is made . . . .

"Such an order cannot, therefore, be considered a judgment in the sense of its being a *final* adjudication of the rights and duties of the parent and the minor child. It was not intended to and does not operate to crystallize or limit the duty of the parent to support his minor child, but merely defines the extent of his duty during the life of the order. . . . The divorce decree and support order *neither* s[e]parately nor in conjunction constitute a *permanent and final* adjudication of the extent of his obligation to support his minor child." (*Rosher v. Superior Court, supra*, 9 Cal.2d at pp. 559-560, italics added, applying former Civ. Code, § 138, now Fam. Code, §§ 3020, 3022, 3040.)

In *Reynolds v. Reynolds* (1943) 21 Cal.2d 580 [134 P.2d 251], the trial court entered a final decree of divorce in 1934. Six years later, the wife sought an increase in child support and served the motion papers by mailing them to the husband's attorneys of record in the divorce action. The question before the Supreme Court was "whether the service of the notice and order to show cause upon the attorneys who represented the defendant in the divorce action was valid as a service upon attorneys then of record." (*Id.* at p. 583 (hereafter *Reynolds*).) At the time, an attorney could withdraw from a case only with the consent of the client or pursuant to court order. (See Amendments, Deering's Ann. Code Civ. Proc. (1991 ed.) foll. § 284, p. 554.) In addition, a notice of withdrawal had to be served on the "adverse party." (*Id.*, § 285, p. 567.)

In finding that service was valid, the Supreme Court observed: "After appearance in an action a defendant or his attorney is entitled to notice of all subsequent proceedings of which notice is required to be given. . . .

". . . A client may of course discharge his attorney at any time . . . , but during the course of a proceeding service of papers on the attorney of record, where service upon the attorney is proper, binds the client until the attorney is discharged or substituted out of the case in the manner provided by law. . . . The court is concerned in such cases not with whether the client is represented by an attorney, but whether he has an attorney of record, whether any change in attorneys has been made [with the client's consent or by court order], and whether notice thereof has been given [to the adverse party]." (*Reynolds, supra*, 21 Cal.2d at pp. 583-584, citations omitted.)

The court continued: "The authority of an attorney . . . ordinarily ends with the entry of judgment, except for the purpose of enforcing it or having it set aside or reversed. . . . Nevertheless the judgment of divorce *insofar as it relates to the custody and maintenance of minor children is not final.* As to those matters *the litigation must be regarded as still pending* . . . . The attorney of record is the person the client has named as his agent upon whom service of papers may be made. . . . The burden lay upon the defendant to keep an attorney of record or to make such arrangements for notice with the clerk as he thought advisable." (*Reynolds, supra,* 21 Cal.2d at p. 584, citations omitted, italics added.)

In sum, from *R. Sherer & Co., supra,* 182 Cal. 488, to *Reynolds, supra,* 21 Cal.2d 580, the courts have recognized that certain family law cases—e.g., those involving child support—are unique in that they remain pending after the entry of a judgment of dissolution.

### E. *Legislation on Procedural Issues*

Leonard points out that it is now easier for counsel to withdraw from representation in family law actions. As stated, in 1943, when *Reynolds* was decided, an attorney could withdraw only with the consent of the client or by court order. (See Amendments, Deering's Ann. Code Civ. Proc., *supra,* foll. § 284, p. 554.) In 1963, the Legislature enacted section 285.1 of the Code of Civil Procedure, which states: "An attorney of record for any party in any civil action or proceeding for dissolution of marriage, legal separation, or for a declaration of void or voidable marriage, or for the support, maintenance or custody of minor children may withdraw at any time subsequent to the time when any judgment in such action or proceeding, other than an interlocutory judgment, becomes final, and prior to service upon him of pleadings or motion papers in any proceeding then pending in said cause, by filing a notice of withdrawal. . . ." (Code Civ. Proc., § 285.1, added by Stats. 1963, ch. 1333, § 1, p. 2856, as amended by Stats. 1969, ch. 1608, § 10, p. 3344.)

The Legislature has also placed restrictions on the method of serving papers in family law cases. In 1992, it enacted section 215 of the Family Code (former Civ. Code, § 4809), which provides: "After entry of a judgment of dissolution of marriage, nullity of marriage, legal separation of the parties, or paternity, or after a permanent order in any other proceeding in which there was at issue the visitation, custody, or support of a child, no modification of the judgment or order, and no subsequent order in the proceedings, is valid unless any prior notice otherwise required to be given to a party to the proceeding is served, in the same manner as the notice is otherwise permitted by law to be served, upon the party. For the purposes of

this section, service upon the attorney of record is not sufficient." (Fam. Code, § 215, added by Stats. 1992, ch. 162, § 10, pp. 464, 469, as amended by Stats. 1993, ch. 219, § 84, p. 1596, and Stats. 1999, ch. 980, § 2; see former Civ. Code, § 4809, added by Stats. 1969, ch. 1608, § 8, pp. 3314, 3336, and amended by Stats. 1983, ch. 1159, § 9, p. 4386.)

Leonard contends that these two statutes conclusively establish that a dissolution action is not pending when a parent seeks to modify child support after the entry of a judgment of dissolution. On the contrary, the statutes merely set forth procedures for withdrawing as counsel and serving papers. They do not alter the time-honored rule that a judgment of dissolution involving the custody and maintenance of minors "is not final," and that, as to child support, "the litigation must be regarded as still pending." (*Reynolds*, *supra*, 21 Cal.2d at p. 584; accord, *Forslund v. Forslund* (1964) 225 Cal.App.2d 476, 487 [37 Cal.Rptr. 489]; *Russ v. Russ* (1945) 68 Cal.App.2d 400, 405 [156 P.2d 767], disapproved on another point in *Allen v. Allen* (1947) 30 Cal.2d 433, 435 [182 P.2d 551].) Indeed, the two statutes were necessary precisely because of that rule. Simply put, the statutes *accommodate* family law attorneys on a practical level, but they do not abrogate the rule of pendency.

As Witkin has explained: "Because of the *peculiar continuing* aspects of family law litigation, an attorney who has represented a party continues to be the party's attorney after final judgment for the purpose of serving notice of subsequent proceedings. (*Reynolds v. Reynolds*[, *supra*], 21 C.2d 580, 583 . . . .) To terminate this responsibility it was formerly necessary to comply with the procedure of substitution, which requires consent of the client or a formal motion and court order. . . . C.C.P. 285.1 now authorizes voluntary withdrawal without such consent or order, after entry of the final decree . . . ." (1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 98, p. 135, original italics omitted.)

Witkin has also discussed the effect of the two statutes together: "[I]f [a] party has appeared in the action and has an attorney, an ordinary procedural paper or notice must be served on the *attorney* and not the party. . . . [¶] . . . [¶]

"In certain situations, service is not made on the attorney: [¶] . . . [¶]

"[As] [w]hen a former attorney has ceased to represent the party. . . . Two statutes implement this rule in family law cases:

"(a) The attorney may withdraw after final judgment by filing a notice of withdrawal, mailing a copy to his client, and serving it on the adverse party. (C.C.P. 285.1; . . .)

"(b) After entry of judgment, no modification or other order is valid unless the required notice is given 'in the same manner as the notice is otherwise permitted by law to be served, *upon the party.*' Service on the attorney of record 'is not sufficient.' (Family C. 215 . . .)." (6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, §§ 12-13, pp. 411-412.)

As we see it, the two statutes have no bearing on whether a dissolution action is pending for purposes of enforcing agreements under section 664.6. Further, assuming for the sake of argument that the statutes somehow limit *Reynolds, supra,* 21 Cal.2d 580, we note that the earlier decisions—*R. Sherer & Co., supra,* 182 Cal. 488; *Jacobs v. Jacobs, supra,* 68 Cal.App. 725; *Lamborn v. Lamborn, supra,* 190 Cal. 794; *Moore v. Superior Court, supra,* 203 Cal. 238; and *Rosher v. Superior Court, supra,* 9 Cal.2d 556—compel the conclusion that a dissolution action remains pending as to the modification of child support.

It is true that the meaning of "pending" may vary from one context to another. For instance, a family court may order a parent to pay child support "pendente lite," that is, pending trial of the petition for dissolution of marriage. (See Fam. Code, §§ 3600-3604; *Jaycee B. v. Superior Court* (1996) 42 Cal.App.4th 718, 720 [49 Cal.Rptr.2d 694]; *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 559-560 [101 Cal.Rptr.2d 86].) Or a defendant in an ordinary civil action may file a demurrer on the ground that "[t]here is another action *pending* between the same parties on the same cause of action." (Code Civ. Proc., § 430.10, subd. (c), italics added.)

But our Supreme Court has made clear that "the phrase . . . 'when an action for divorce is *pending,*' embrace[s] many diverse proceedings growing out of the divorce action and *arising after entry of the final decree.*" (*Lerner v. Superior Court* (1952) 38 Cal.2d 676, 685 [242 P.2d 321], italics added.) As an example of such a proceeding, the court in *Lerner* specifically mentioned the modification of child support. (*Ibid.,* citing *Reynolds, supra,* 21 Cal.2d at p. 585.) Accordingly, *Lerner* leaves no doubt that an action for dissolution remains pending with respect to modifying support payments. (*Lerner v. Superior Court, supra,* 38 Cal.2d. at p. 685, applying former Civ. Code, §§ 137, 137.3, now Fam. Code, § 2030; accord, *Gottlieb v. Gottlieb* (1957) 155 Cal.App.2d 715, 717-718 [318 P.2d 763].)

That is not to say that a trial court must blindly enforce any type of child support agreement signed by the parties after judgment. ■ " '[P]arties to a divorce cannot abridge the court's ability to act on behalf of the children . . . .' . . . [¶] . . . '[C]ontinuing jurisdiction [over child support] is vested in the court, and is to be exercised, in the interests of children. . . .' " (*In re*

*Marriage of Lambe & Meehan* (1995) 37 Cal.App.4th 388, 392-393 [44 Cal.Rptr.2d 641].) "Parents do not have the power to agree between themselves to abridge their child's right to support. . . . Nor can they restrict the court's power to act on behalf of the child in support, custody, or parentage proceedings. . . . 'Agreements and stipulations compromising the parents' statutory child support obligation or purporting to divest the family court of jurisdiction over child support orders are *void* as against public policy. . . .' " (*In re Marriage of Lusby* (1998) 64 Cal.App.4th 459, 469 [75 Cal.Rptr.2d 263], citations omitted.)

Nevertheless, Leonard argues that, although the trial court in this case had "continuing jurisdiction" to protect the interests of the children, the dissolution action itself did not remain pending after the entry of judgment. We disagree.

The distinction between continuing jurisdiction and the pendency of an action was discussed in *Colvig v. RKO General, Inc.* (1965) 232 Cal.App.2d 56 [42 Cal.Rptr. 473]. There, a radio announcer sued his former employer for wrongful termination of employment. The employer demurred to the complaint on the ground that another action—an arbitration proceeding—was pending between the parties on the same cause of action. (See Code Civ. Proc., § 430.10, subd. (c), formerly Code Civ. Proc., § 430, subd. 3.) The trial court sustained the demurrer without leave to amend.

The Court of Appeal reversed, stating that the arbitration proceeding was not pending because judgment had been entered in that case, i.e., the arbitration award had been confirmed. (*Colvig v. RKO General, Inc., supra,* 232 Cal.App.2d at pp. 62-64 & fn. 3, 71-73.) Nor did it matter to the Court of Appeal that, in the arbitration proceeding, the superior court had continuing jurisdiction for the "purpose of meeting future problems, changed conditions or circumstances, or to consider new facts occurring since the making of the judgment or award." (*Id.* at pp. 72-73.) In short, the arbitration proceeding, having been reduced to judgment, did not preclude the wrongful termination action from going forward.

We find *Colvig* distinguishable. For one thing, as discussed above, certain family law actions—e.g., those involving child support—are treated differently than civil actions—like *Colvig*—when it comes to whether an action is pending. (See *Lamborn v. Lamborn, supra,* 190 Cal. at pp. 795-796; *Clayton v. Clayton, supra,* 117 Cal.App.2d at p. 12.) Because the present action involves child support, it remains pending as to support issues. (See *Lamborn, supra,* at pp. 795-796; *Clayton, supra,* at p. 12.) Further, under the demurrer statute (Code Civ. Proc., § 430.10, subd. (c))—on which *Colvig*

was based—the term "pending" is used as defined in Code of Civil Procedure section 1049. (See *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 303 & fn. 7 [63 Cal.Rptr.2d 74, 935 P.2d 781].) But, as we have explained, section 1049—which states that an action is pending from its commencement until its final determination upon appeal or until the time for appeal has expired—does not apply to child support proceedings. (See pt. D, *ante*.)

We therefore conclude that, for purposes of section 664.6, "litigation" was "pending" on March 5, 1998, when Leonard and Elizabeth executed the letter agreement modifying child support. The other requirements of section 664.6 have also been satisfied. (See *Levy v. Superior Court, supra,* 10 Cal.4th at p. 586 [agreement must be signed by the "parties," i.e., the litigants themselves]; *Kirby v. Southern Cal. Edison Co.* (2000) 78 Cal.App.4th 840, 844-846 [93 Cal.Rptr.2d 223] [written release not enforceable where executed before action is filed].) It follows that the trial court properly enforced the letter agreement under section 664.6.[1]

## DISPOSITION

The order is affirmed.

Spencer, P. J., and Ortega, J., concurred.

On May 23, 2001, the opinion was modified to read as printed above.

---

[1]At oral argument, Leonard's counsel stated, without elaboration or supporting authority, that the trial court had erred by making the support payments "retroactive," i.e., dating back to a period of time when the agreement was in effect but before Elizabeth had filed her section 664.6 motion. Because this contention was not raised earlier, we do not address it. (See *Sunset Drive Corp. v. City of Redlands* (1999) 73 Cal.App.4th 215, 226 [86 Cal.Rptr.2d 209].)