[No. E023834. Fourth Dist., Div. Two. Feb. 29, 2000.]

PATRICIA KIRBY, Plaintiff and Appellant, v.
SOUTHERN CALIFORNIA EDISON COMPANY et al., Defendants and
Respondents.

**COUNSEL**

Iler & Iler, Brooks L. Iler; Mazur & Mazur, Janice R. Mazur and William E. Mazur for Plaintiff and Appellant.

Kingsley Hines; Donald A. Redd; Michael Gonzales; Douglas P. Ditonto; Brian A. Cardoza; and David R. Garcia for Defendants and Respondents.

**OPINION**

**McKINSTER, J.**—A plaintiff in a wrongful death action appeals from an order dismissing her action pursuant to Code of Civil Procedure section

664.6.[1] Finding that the summary procedures of section 664.6 are inapplicable in these circumstances, we reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

In May of 1997, Patricia Kirby filed a complaint against Southern California Edison Company, alleging that as the result of Edison's negligent design, maintenance or operation of a power line, her son, Carl Lee Jones, was electrocuted. She prayed for general and special damages, including medical and burial expenses.

Edison generally denied the allegations of Kirby's complaint. It also alleged as an affirmative defense that Kirby had entered into a binding settlement of her claim prior to filing suit.

In August of 1998, Edison moved pursuant to section 664.6 for an order enforcing its alleged settlement agreement with Kirby. Edison's motion was supported by a declaration from an Edison claim representative, stating that Kirby's son had been electrocuted by a downed high-voltage wire during a windstorm on the evening of December 14, 1996, and that in exchange for a $2,500 check Kirby had executed a general release dated December 16, 1996. Edison asked that the trial court enforce the release by dismissing Kirby's complaint.

In her opposition to the motion, Kirby offered evidence, largely from the depositions of the Edison claims representatives, supporting the following facts: The fatal accident occurred between 8:00 p.m. and 9:00 p.m. on December 14. Two Edison claim representatives visited Kirby the very next morning to investigate the incident and take a written statement from her. Kirby was emotionally distraught at the loss of her son and told Edison's representatives that she could not afford to bury him because she had buried another family member a few months earlier.

They returned to Kirby's house the following day, December 16. She repeated that she did not have sufficient funds to bury her son. Standing in her front yard, Edison's representatives presented her with a check for $2,500 to assist in the burial of her son, as a gesture of goodwill. They also told her that to obtain the money she would have to sign the release, which she did. However, the purpose of presenting the check was not to secure a release, but to help with the financial burden of the funeral.

At the time the claims representatives presented the check to Kirby, they had completed their investigation. They had determined that a conductor had

---

[1]All section references are to the Code of Civil Procedure.

broken due to high winds, that a power line had come down, and that for some unknown reason a relay or circuit breaker that would have shut off the current to that downed line did not function. Nevertheless, they told Kirby that Edison had not been negligent or otherwise responsible for the accident in any way.

After Kirby had consulted with an attorney, the check was returned to Edison.

The trial court granted the motion and dismissed the action. Kirby appeals.

## CONTENTIONS

On appeal, Kirby argues that the trial court erred because the release was obtained under circumstances suggesting fraud, coercion and overreaching rather than mature reflection and deliberate assent. She also argues that the settlement agreement is not supported by consideration. Edison disputes those contentions and argues that the dismissal should be affirmed.

On our own motion, we raised the issue of whether section 664.6 applied in this instance. Having invited briefing from the parties on that issue and considered their supplemental briefs filed in response to that invitation, we conclude that section 664.6 does not apply and that the dismissal was unauthorized. Accordingly, we reverse the judgment without addressing the issues raised by the parties.

## ANALYSIS

Section 664.6 provides a summary procedure by which a trial court may specifically enforce an agreement settling pending litigation without requiring the filing of a second lawsuit. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809 [71 Cal.Rptr.2d 265].) That section provides in relevant part: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."

Here, the release agreement that Edison moved to enforce, and that the trial court specifically enforced by granting that motion, was not entered into between "parties to pending litigation . . . ." At the time the disputed release was executed, no action was pending at all. Kirby did not file her action for damages for the wrongful death of her son until May 29, 1997, over five months after the execution of the release.

Do the summary procedures of section 664.6 apply to the enforcement of a settlement agreement made at a time when no litigation was pending?

*Viejo Bancorp, Inc. v. Wood* (1989) 217 Cal.App.3d 200 [265 Cal.Rptr. 620] resolves a similar but distinct issue. There an action had been filed, the parties to that action had agreed to a settlement of the case, and the action had been dismissed. (*Id.* at pp. 203-204.) One of the parties then filed a new action and successfully moved pursuant to section 664.6 to have a judgment entered in that new action enforcing the settlement agreement. (217 Cal.App.3d at p. 204.) Our colleagues in Division Three of this court reversed, holding that a motion under section 664.6 "cannot be made in a separate action to enter judgment pursuant to the terms of a settlement in a prior action." (217 Cal.App.3d at p. 208.)

In reaching that conclusion, the court observed that, "[b]y its very terms, section 664.6 is limited to settlements reached in *pending* litigation." (*Viejo Bancorp, Inc. v. Wood, supra,* 217 Cal.App.3d at p. 206.) Furthermore, the court assumed that section 664.6 "requires an action to be pending when the parties enter into the agreement." (217 Cal.App.3d at p. 206.) That assumption is illustrated by its characterization of the issue before it, i.e., whether section 664.6 is available "in an action other than the action *in which the settlement was made.*" (217 Cal.App.3d at p. 206, italics added.) Our task is to decide whether that assumption is correct. It is.

■ Our primary task in interpreting a statute is to determine the Legislature's intent so as to effectuate the purpose of the law. (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 826 [4 Cal.Rptr.2d 615, 823 P.2d 1216]; *Fontana Unified School Dist. v. Burman* (1988) 45 Cal.3d 208, 218 [246 Cal.Rptr. 733, 753 P.2d 689].) Because the statutory language is the best indicator of legislative intent, we must begin by examining the words of the statute itself (*Kelsey S.,* at p. 826), giving those words their plain meanings (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 376 [20 Cal.Rptr.2d 330, 853 P.2d 496]). "When statutory language is clear and unambiguous, there is no need for construction, and courts should not indulge in it." (*West Covina Hospital v. Superior Court* (1986) 41 Cal.3d 846, 850 [226 Cal.Rptr. 132, 718 P.2d 119, 60 A.L.R.4th 1257].)

■ The statutory language at issue here refers to settlements by "parties to pending litigation" who "stipulate . . . for settlement of the case . . . ." That language is clear and unambiguous. As used in section 664.6, the term "parties" means "litigants." (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 586 [41 Cal.Rptr.2d 878, 896 P.2d 171].) There can be no

litigants until there is a case on file to litigate. And no one can stipulate to a settlement of "the case" unless and until that case has been filed. Accordingly, that language can only be intended to refer to settlement agreements entered into while litigation between the settling parties is pending. That lack of ambiguity precludes us from rewriting or otherwise imaginatively construing the statutory language in any manner that would extend to the prelitigation release at issue here. (*Faria v. San Jacinto Unified School Dist.* (1996) 50 Cal.App.4th 1939, 1945 [59 Cal.Rptr.2d 72].)

Even were there any ambiguity to be resolved, the legislative history of section 664.6 reinforces the conclusion that the Legislature intended the section to provide a means of enforcing settlement agreements entered into after litigation has been filed. An analysis prepared by the Senate Committee on the Judiciary describes the problem the legislation was designed to address: "Existing Rule of Court 207.5 provides for a pretrial settlement conference for civil actions. However, neither existing law nor rule of court authorizes an entry of judgment pursuant to the settlement terms." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1925 (1981-1982 Reg. Sess.) p. 2.) The absence of that authorization was a problem because "[p]arties who initially agree to the terms of a settlement often change their minds after the case is taken off calendar. Thus the time taken and the money spent on holding pretrial conferences are wasted." (*Id.* at p. 4.) If no litigation was pending between the parties at the time of the settlement, then no judicial settlement conference would ever have been scheduled or conducted, and the problem targeted by the Legislature would not exist.

The other cases interpreting section 664.6 confirm our conclusion that the section's summary procedure was authorized only to enforce agreements made while litigation was pending. For instance, *Weddington Productions, Inc. v. Flick, supra,* 60 Cal.App.4th 793, opines that the purpose of section 664.6 is to enforce a settlement agreement without the necessity of filing either "a new lawsuit" or " 'a supplemental pleading in the first action.' " (60 Cal.App.4th at p. 809.) There can be no "new" action unless there is an earlier, "old" action.

Edison argues that "there is no logical reason" to distinguish between settlements reached before litigation was filed and those reached during the pendency of litigation. It is mistaken. Section 664.6's "summary, expedited procedure[s]" are available only "when certain requirements that decrease the likelihood of misunderstandings are met." (*Levy v. Superior Court, supra,* 10 Cal.4th at p. 585.) The Legislature could have reasonably concluded that settlement agreements entered into after litigation has been filed, when the

parties to that litigation are generally represented by counsel, are less likely to result in misunderstandings and disputes than are agreements reached before the parties have retained attorneys.

If Edison can establish the enforceability of the release as a matter of undisputed fact, it may move for summary judgment. If the enforceability of the release depends upon issues of fact that are disputed, then it must litigate those factual issues at trial. But because Kirby and Edison were not, at the time the release was executed, parties to any pending litigation that the release was intended to resolve, Edison may not employ the summary procedures afforded by section 664.6 to determine the enforceability of that release.

## DISPOSITION

The judgment of dismissal is reversed. The trial court is directed to vacate its order granting Edison's motion and to enter a new order denying that motion. Kirby shall recover her costs on appeal.

Ramirez, P. J., and Hollenhorst, J., concurred.