[No. H034058. Sixth Dist. Dec. 15, 2009.]

TIMOTHY J. WALTON, Plaintiff and Respondent, v.
SCOTT MUELLER, Defendant and Appellant.

**COUNSEL**

Carr & Ferrell, Robert J. Yorio and Christopher P. Grewe for Defendant and Appellant.

Law Offices of Timothy Walton and Timothy J. Walton for Plaintiff and Respondent.

## OPINION

**DUFFY, J.**—A $40,000 default judgment was entered against defendant Scott Mueller in this action in June of 2006. That judgment became final. Some two years later, Mueller began negotiations with Timothy J. Walton, the judgment creditor, to satisfy the judgment. Although Mueller contends that they reached an agreement to fully satisfy the judgment by Mueller paying Walton $15,000, Walton disputes that such a contract was ever formed. Without actually having paid anything, Mueller filed a motion to enforce the alleged settlement, purportedly under Code of Civil Procedure section 664.6,[1] which, under certain conditions, provides for entry of judgment in conformance with a settlement in pending litigation. The trial court denied the motion, finding that no settlement agreement was ever reached. Regardless of whether an agreement was reached, we conclude that section 664.6 does not apply after a judgment has become final in an ordinary civil action because, at that point, litigation is no longer pending as expressly contemplated by the statute. We accordingly affirm.

### STATEMENT OF THE CASE

Walton, a lawyer representing himself, initiated this action by filing his complaint for damages and injunctive relief against defendants other than Mueller on December 28, 2004. It alleged violations of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) for a first cause of action and a second claim based on "California Restrictions On Unsolicited Commercial E-mail Advertisers" under Business and Professions Code section 17529.5. The factual basis of the claims was that the defendants had allegedly sent Walton numerous unsolicited commercial e-mails containing deceptive and false information and advertisements. The complaint was amended twice, among other things adding Mueller, a Florida resident allegedly doing business as "Acceleratebiz Incorporated," as an individual defendant. Mueller was alleged in the operative third amended complaint to have sent Walton 40 unsolicited e-mails, for each of which Walton sought, among other things, $1,000 in statutory liquidated damages under Business and Professions Code section 17529.5, subdivision (b)(1)(B)(ii).

Default was entered against Mueller on January 26, 2006. A default judgment against him was entered by the court on August 25, 2006, for $40,000, supported by Walton's declaration as to having received the 40 unsolicited commercial e-mails from Mueller.[2]

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] The judgment also included injunctive relief not pertinent here.

Two years later, in August 2008, Mueller's counsel orally proposed to Walton that he accept $15,000 from Mueller, payable in three installments over 12 months, in full satisfaction of the judgment. This offer was confirmed by Mueller's counsel by e-mail to Walton on August 28, 2008. Walton countered that offer on September 3, 2008, by orally proposing that Mueller pay him $20,000 in installments over 18 months. Mueller, through counsel, then orally countered the next day with an offer to pay Walton $15,000 in installments over nine months. On October 13, 2008, this offer was communicated to Walton by letter, after Walton requested that the discussions be reduced to writing.

At that point, Walton was simultaneously in the process of executing on the judgment by levy against one of Mueller's bank accounts, though Walton did not apprise Mueller's counsel of this. But after the bank account was levied, Mueller told his lawyer, who wrote to Walton on October 16, 2008, demanding that execution efforts cease while they "finalize settlement documentation." The letter did not mention the terms of any specific settlement. Walton responded by letter dated October 17, 2008, to Mueller's counsel, stating that he would not cease executing on the judgment, as was his right. The letter also impliedly rejected Mueller's last settlement offer of $15,000 payable over nine months[3] and said, "Am I to understand that you now seek settlement on no conditions other than payment of money? If so, and you have no other proposed settlement terms that you wish to include, please send a check in the amount proposed [$15,000], and we will cease any further proceedings in regard to execution of the judgment."

On October 22, 2008, Mueller's counsel responded by letter to Walton. Among other things, he asserted that a binding contract had been reached in settlement of the judgment on the terms relayed in Mueller's last offer— $15,000 payable over nine months. But, he continued, "[n]otwithstanding that agreement, the attorneys working on your behalf have apparently filed an execution lien against Mr. Mueller's bank account.[4] In view of that action, Mr. Mueller offers to pay the sum of $15,000 to settle this litigation. Said money to be paid directly to you from the account that is presently subject to the execution lien. Obviously, your enforcement efforts preclude him from writing a check against that account at the present time. [¶] The offer stated in this letter is without prejudice and with a full reservation of rights to enforce the earlier binding settlement agreement between you and Mr. Mueller . . . ."

---

[3] Walton later asserted in a declaration that he had also expressly rejected this offer and we assume this asserted rejection was oral.

[4] Walton apparently engaged counsel to assist in judgment-enforcement efforts.

On October 30, 2008, Walton again wrote to Mueller's counsel. He denied that a settlement had been reached and stated his position that negotiations had not resulted in the formation of any contract. He further requested Mueller's counsel to reduce any proposed settlement to a complete written draft of an agreement containing all terms and conditions so that he could fully understand and evaluate it.

On October 31, 2008, on Mueller's application, the court issued an order to show cause why enforcement of the judgment should not be stayed on account of the alleged settlement agreement composed of payment by Mueller to Walton of $15,000 over nine months. But on November 13, 2008, the court denied Mueller's motion to stay enforcement, specifically finding "that the parties did not reach any settlement agreement."

On November 24, 2008, Mueller himself wrote to Walton, stating, "In response to your letter of October 17, 2008 . . . , I accept your offer to settle this lawsuit in exchange for a lump sum $15,000 payment. I hereby tender the settlement payment of $15,000." Enclosed with the letter was *a copy* of a cashier's check payable to Walton, but no actual check.

In response, Walton wrote to Mueller's counsel on December 3, 2008. He stated his position that his October 17th offer to accept a check for $15,000 in full satisfaction of the judgment had been rejected by Mueller's counsel's letter of October 22d, which had offered to fully satisfy the judgment by payment of $15,000 directly from Mueller's bank account that was subject to the execution levy rather than by separate check. This would necessarily have required Walton to release the levy before receiving payment. Walton then offered to "agree to a confidential settlement for $60,000. Once I have the check for $60,000, I will cease enforcement actions."

On January 22, 2009, Mueller filed a motion to enforce what he contended was a binding settlement, as evidenced by Walton's offer of October 17th to accept a check for $15,000 in full satisfaction of the judgment and Mueller's letter of November 24th enclosing the copy of a cashier's check. The motion was brought under section 664.6, on the ground that the parties had agreed to the terms of a settlement in writing. Walton opposed the motion, reiterating his contention that no contract had been formed. The court denied the motion from the bench, stating that it did not "believe there was a valid settlement agreement entered into."[5]

---

[5] According to the superior court's docket, no signed written order denying the motion was ever entered.

## DISCUSSION

### I. *Appealability*

There are two issues relating to appealability.

First, is the order appealable? Ordinarily, an order denying a motion to enforce a settlement in pending litigation under section 664.6 is not appealable, as judgment has not yet been entered and there are accordingly issues left in the trial court for consideration. (*Doran v. Magan* (1999) 76 Cal.App.4th 1287, 1293 [91 Cal.Rptr.2d 60] ["The denial of the motion, rather than finally disposing of the action, expressly leaves it open."]; cf., *Viejo Bancorp, Inc. v. Wood* (1989) 217 Cal.App.3d 200, 205 [265 Cal.Rptr. 620] (*Viejo Bancorp*) [order granting § 664.6 motion is appealable as the "intended substance and effect of the judgment is to finally dispose of" the action].) But here, because the motion concerned an alleged settlement to satisfy a judgment, the motion was necessarily brought after judgment had been entered. Apart from the question of the motion's propriety at that juncture, its denial nevertheless resulted in an order after judgment that is arguably appealable under section 904.1, subdivision (a)(2) as an order made after an appealable judgment. We will accordingly treat the order denying the section 664.6 motion as such in these narrow circumstances, particularly because there are no issues left for the trial court's consideration, a hallmark of an appealable order or judgment.[6] (*Doran v. Magan, supra*, 76 Cal.App.4th at p. 1293.)

The second issue relating to appealability in this case is whether the appeal is premature as no written order was entered denying the motion. The minute order reflecting that the motion was denied was not included in the record but we obtained it from the superior court and have augmented the record on our own motion to include it. The minute order does not provide for or require that a written order be prepared for entry. It is therefore appealable even though it is not a formal, signed order. (*In re Marriage of Lechowick* (1998) 65 Cal.App.4th 1406, 1410 [77 Cal.Rptr.2d 395] [unsigned minute order appealable unless it recites that formal order is to be prepared], criticized on another point in *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1195, fn. 11 [86 Cal.Rptr.2d 778, 980 P.2d 337].) And for purposes of determining the time for filing a notice of appeal, the minute order was filed or entered on the date it was entered in the permanent minutes—February 17, 2009. (Cal. Rules of Court, rule 8.104(d)(2); *Strathvale Holdings v. E.B.H.* (2005) 126 Cal.App.4th 1241, 1248 [25 Cal.Rptr.3d 372].) The order was

---

[6] This is not to say that we sanction departing from the general rule that ordinarily, a motion denying a section 664.6 motion is not appealable.

timely appealed on March 27, 2009. The appeal is therefore not premature and we proceed to the merits.

## II. *The Trial Court Properly Denied the Section 664.6 Motion*

The parties assumed the application of section 664.6 and focused their briefing on whether or not an enforceable contract was formed. But we question the applicability of section 664.6 to the circumstances presented here, even if a binding contract was formed.[7]

■ Section 664.6 makes available "a summary procedure by which a trial court may specifically enforce an agreement settling pending litigation without requiring the filing of a second lawsuit" or a supplemental pleading in the existing case on which a party may move for summary judgment to enforce a settlement. (*Kirby v. Southern Cal. Edison Co.* (2000) 78 Cal.App.4th 840, 843 [93 Cal.Rptr.2d 223] (*Kirby*), citing *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809 [71 Cal.Rptr.2d 265].) The statute provides in pertinent part that "[i]f parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."[8] (§ 664.6.)

The threshold and dispositive issue presented here is whether section 664.6 can be applied to enforce an alleged settlement that occurs after a judgment has already become final in a civil action. At that point, is the litigation "pending" such that section 664.6 may be applied, particularly when the only remedy made available by the statute is entry of judgment pursuant to the settlement? This question involves construction and application of the statute, to which we apply independent review. (*Williams v. Saunders* (1997) 55 Cal.App.4th 1158, 1162 [64 Cal.Rptr.2d 571].) In doing so, we review the court's ruling and not its rationale. (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329–330 [48 P. 117]; *Perlin v. Fountain View Management, Inc.* (2008) 163 Cal.App.4th 657, 663–664 [77 Cal.Rptr.3d 743].)

■ "Our primary task in interpreting a statute is to determine the Legislature's intent so as to effectuate the purpose of the law. [Citations.] Because the statutory language is the best indicator of legislative intent, we

---

[7] We therefore requested and received supplemental briefing on the point.

[8] The statute also provides that "[i]f requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." (§ 664.6.) This provision is not pertinent to our analysis in this case because the existing judgment, which was not entered pursuant to a settlement, provided no such thing.

must begin by examining the words of the statute itself [citation], giving those words their plain meanings [citation]. 'When statutory language is clear and unambiguous, there is no need for construction, and courts should not indulge in it.' [Citation.]" (*Kirby, supra,* 78 Cal.App.4th at p. 844.)

Previous cases analyzing the applicability of section 664.6 have addressed in other contexts the meaning of the phrase "pending litigation." In *Viejo Bancorp*, for example, parties to the action had agreed to a settlement of the case, and the action was dismissed. (*Viejo Bancorp, supra,* 217 Cal.App.3d at pp. 203–204.) After problems implementing the settlement arose, one of the parties then filed a new action. The party then successfully moved in that action under section 664.6 to enforce the earlier settlement by entry of judgment in the new action pursuant to the settlement of the previously dismissed one. (*Viejo Bancorp,* at p. 204.) The Court of Appeal reversed, holding that a section 664.6 motion "cannot be made in a separate action to enter judgment pursuant to the terms of a settlement in a prior action." (*Viejo Bancorp,* at p. 208.) In so concluding, the court considered the issue one of subject matter jurisdiction. It observed that "[b]y its very terms, section 664.6 is limited to settlements reached in *pending* litigation" and that the statute "requires an action to be pending when the parties enter into the agreement." (*Id.* at p. 206.)

In *Kirby*, the plaintiff filed a wrongful death action. The defendant asserted in its answer that a settlement had been reached before litigation had even begun. The defendant moved to enforce that settlement under section 664.6 and the trial court granted the motion, dismissing the action. (*Kirby, supra,* 78 Cal.App.4th at pp. 842–843.) The Court of Appeal reversed, concluding that the summary procedures of section 664.6 do not apply to a settlement agreement made before litigation was actually pending. The court reasoned that the statutory language "refers to settlements by 'parties to pending litigation' who 'stipulate . . . for settlement of the case . . .'" and that this language is clear and unambiguous in its requirement that parties be litigants who settle *while* litigation is pending. (78 Cal.App.4th at pp. 844–845.) The court further observed that the statute's legislative history reinforced its requirement that litigation be pending, as the problem the Legislature had targeted was that of parties to a settlement reached at a pretrial conference changing their minds after the case had been taken off calendar—a problem that does not exist outside the context of pending litigation. (*Id.* at p. 845.)

In *Housing Group v. United Nat. Ins. Co.* (2001) 90 Cal.App.4th 1106 [109 Cal.Rptr.2d 497] (*Housing Group*), parties to an insurance dispute participated in private mediation and reached a settlement. No lawsuit was pending

at the time. The parties stipulated to the appointment of a judicial referee or judge pro tem in an attempt to secure that their settlement was enforceable under section 664.6. They filed a stipulated petition in the superior court for the appointment of a judge pro tem to preside over the entry of a settlement. (*Housing Group*, at p. 1107.) The court appointed a judge pro tem and the parties recorded a settlement at a hearing before him. One of the parties later moved in the superior court under section 664.6 to enforce the settlement. The court granted the motion and entered a partial judgment. (*Housing Group*, at p. 1107.) The Court of Appeal reversed, concluding that the superior court lacked subject matter jurisdiction, despite the parties' attempt to confer it by stipulation, because they did not seek the reference in litigation pending before the court. No complaint alleging a dispute had ever been filed, and the section authorizing the reference, section 638, did not by itself confer subject matter jurisdiction to render the settlement enforceable by the court under section 664.6. (*Housing Group*, at pp. 1108, 1113–1115.)

These three cases all address the "pending litigation" requirement of the statute by narrowly construing this term on its face, which is a starting point in the construction of the statute. But none of them presents the circumstance in which section 664.6 was invoked after a judgment had already been entered. *In re Marriage of Armato* (2001) 88 Cal.App.4th 1030 [106 Cal.Rptr.2d 395] (*Armato*) is the only published case to address section 664.6's application to a postjudgment circumstance. There, the parties' marriage was dissolved by a judgment of dissolution that included provisions relating to the husband's payment of monthly child support. The judgment also provided that the court would retain continuing jurisdiction to effectuate the terms of the judgment and that no separate proceedings would be required in order to do so. (*Armato*, at pp. 1032–1033.) At one point, pursuant to motion, the court modified child support. Later, the parties on their own agreed to another modification by which the husband would pay higher support and they reduced their agreement to a writing that both of them signed. The husband made the higher payments for some time but then reduced his payments to the old amount based on his assertion that due to other circumstances between the parties, he could no longer afford the higher payments. (*Id.* at pp. 1033–1034.) The wife brought a motion under section 664.6 to enforce their postdissolution-judgment written agreement. The trial court granted the motion, concluding that the husband and wife were parties to pending litigation as required by the statute " 'inasmuch as there was continuing jurisdiction to modify a support order in a family law case.' " (88 Cal.App.4th at p. 1034.)

Faced with the question whether the meaning of "pending litigation" as used in section 664.6 applies to postdissolution child support matters, the Court of Appeal first noted as important that the judgment in that case itself provided for continuing jurisdiction to effectuate it and specifically provided

that no separate proceedings would be required in order to do so. (*Armato, supra*, 88 Cal.App.4th at p. 1035.) Then the court analyzed section 664.6 in the family law context, observing that the statute was enacted to further legislative policies shared with specific family law provisions concerning child support modification, particularly the shared policy for simple and expedited proceedings. (*Armato*, at p. 1036.) The court emphasized the public policies that place " 'a high priority on enforcement of child support awards' " and the ability of family courts to retain jurisdiction to modify and enforce such awards following a final decree of dissolution, noting that these policies preserve access to the courts and to " 'modification and enforcement mechanisms' " that promote " ' "flexibility in the administration of judgments which will affect the lives of the parties far into the future, especially after very lengthy marriages." ' " (*Id.* at pp. 1036–1037, italics omitted.) The court further noted the 1996 legislative direction to the Judicial Council to adopt rules of court and forms for a simplified method to modify support orders and other legislative action to streamline and make efficient the unique matter of child support modification and to decrease the need for litigation in this area. (*Id.* at p. 1037; see, e.g., Fam. Code, §§ 4053, subds. (a), (j), (*l*), 4050–4076, 3901, subd. (b), 3660–3668.)

The *Armato* court went on to analyze the meaning of "pending" in the context of family law, observing that in that specific and unique context, as distinct from ordinary civil actions, a dissolution action remains pending after entry of judgment, particularly for purposes of child support modification. (*Armato, supra*, 88 Cal.App.4th at pp. 1045–1047; see *Lerner v. Superior Court* (1952) 38 Cal.2d 676, 685 [242 P.2d 321] [many diverse proceedings grow out of a divorce action and arise after entry of the final decree]; *Lamborn v. Lamborn* (1923) 190 Cal. 794, 795–796 [214 P. 862] [dissolution action remained pending as to child support issues].) Further, the court observed, section 1049, which provides that "[a]n action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed . . . ," does not apply to child support proceedings. (*Armato, supra*, 88 Cal.App.4th at p. 1047.)

Based on all of these considerations, the *Armato* court concluded that for purposes of section 664.6, " 'litigation' was 'pending' . . . when [the parties] executed the letter agreement modifying child support" such that the statute could be used, even postdissolution judgment, to enforce the agreement. (*Armato, supra*, 88 Cal.App.4th at p. 1047.)

■ Notwithstanding *Armato*, we hold that section 664.6, by its plain and unambiguous terms, does not apply in an ordinary civil action after a judgment—unrelated to the alleged settlement and therefore containing no provision for continuing jurisdiction to enforce it—has been entered and has become final in the sense that the time for appeal has passed. We so conclude because at that point, the litigation is no longer "pending" as used in the statute. To hold otherwise, out of perceived fairness or for efficiency's sake, even recognizing the established policy of promoting settlement, would do violence to the statutory language. The statute's sole remedy—entry of judgment pursuant to the terms of an agreed settlement—reinforces our conclusion as in this situation, final judgment in the action has already been entered and the one-final-judgment rule precludes entry of a second judgment.[9] Section 1049—defining when an action is pending and limiting that state to the point at which the time for appeal from the judgment has passed—further supports our conclusion. And although *Armato* was also decided in a postjudgment context and held that section 664.6 could be used to enforce an agreement concerning modification of child support, that holding was unique to the family law context (*Housing Group, supra*, 90 Cal.App.4th at pp. 1112–1113) and, as we read it, to the specific context of child support modifications. Moreover, the distinctions the *Armato* court made between ordinary civil actions, like the one here, and postdissolution child-support-modification proceedings for purposes of when an action is "pending" make the result in that case not inconsistent with our holding.

■ In supplemental briefing, Mueller likens this case to one in which a partial dismissal had been filed before the section 664.6 motion, such that part of the action remained pending before the court, which was thus held to be not lacking subject matter jurisdiction to enforce a settlement under section 664.6. (See *Casa de Valley View Owner's Assn. v. Stevenson* (1985) 167 Cal.App.3d 1182, 1191–1192 [213 Cal.Rptr. 790] (*Casa de Valley View*).) But here, we are not dealing with a partial dismissal. And a judgment had already

---

[9] Section 904.1, which codifies the general list of appealable judgments and orders, also effectively codifies the common law one-final-judgment rule. Under this rule, an appeal lies only from a final judgment that terminates the trial court proceedings by completely disposing of the matter in controversy. (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 304 [63 Cal.Rptr.2d 74, 935 P.2d 781]; *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697 [107 Cal.Rptr.2d 149, 23 P.3d 43] (*Griset*); *Otay River Constructors v. San Diego Expressway* (2008) 158 Cal.App.4th 796, 803 [70 Cal.Rptr.3d 434].) A judgment is "the final determination of the rights of the parties in an action or proceeding." (§ 577.) Accordingly, there can be but one as the policy behind the one-final-judgment rule is the avoidance of piecemeal disposition of an action. (*Griset, supra*, 25 Cal.4th at p. 697; *Moore v. City & County of San Francisco* (1970) 5 Cal.App.3d 728, 734 [85 Cal.Rptr. 281] ["there ordinarily cannot be multiple final judgments in a single action"].)

been entered and become final at the time of the alleged settlement. In discussing the question of the presence or lack of the trial court's subject matter jurisdiction, the appellate court in *Casa de Valley View* acknowledged that " 'where a tribunal has jurisdiction over the parties and the subject matter, the jurisdiction continues *until a final judgment is entered.*' [Citations.]" (*Casa de Valley View, supra*, 167 Cal.App.3d at p. 1191, italics added.) Thus, rather than supporting the application of section 664.6 here, *Casa de Valley View* instead buttresses our conclusion that the statute does not apply, as the trial court was without subject matter jurisdiction to enforce a settlement made after a judgment in the action had already been entered and had become final, by entry of another judgment.

■ *Basinger v. Rogers & Wells* (1990) 220 Cal.App.3d 16, 22–24 [269 Cal.Rptr. 332], also cited by Mueller, further supports the conclusion that section 664.6 does not furnish subject matter jurisdiction to enforce a settlement after a judgment has been entered and become final. In that case, a judgment of dismissal had been entered as part of a settlement. The Court of Appeal held that in order to later enforce the payment provisions of the settlement under section 664.6, the party had to first obtain relief from the judgment of dismissal under section 473, thus restoring subject matter jurisdiction to the trial court so it could proceed to apply section 664.6. (220 Cal.App.3d at pp. 22–24.) The court was without subject matter jurisdiction to apply section 664.6 unless the judgment of dismissal was properly vacated under grounds provided in section 473—mistake, surprise, or excusable neglect.

■ Mueller also attempts to analogize application of section 664.6 to case law concerning a trial court's retention of in personam jurisdiction over a defendant to enforce an existing judgment (see, e.g., *Goldman v. Simpson* (2008) 160 Cal.App.4th 255, 263–264 [72 Cal.Rptr.3d 729]) and to various statutes generally governing the renewal, enforcement, and satisfaction of judgments. (See, e.g., §§ 683.120, 683.170, subd. (b), 699.040, subd. (a), 701.520, subds. (c), (d), 724.030–724.050, 724.080.) But we are not dealing with the concept of in personam jurisdiction. And for purposes of subject matter jurisdiction, the renewal, enforcement, and satisfaction of an existing judgment are entirely distinct matters from an attempt to enforce a settlement under section 664.6 by entry of a judgment pursuant to the settlement. A court of course retains subject matter jurisdiction to renew, enforce, or compel satisfaction of an existing judgment by the statutory procedures available for these purposes. (See, e.g., §§ 680.010–720.800, 724.010–724.260.) But these statutory mechanisms are unrelated to the enforcement of an alleged settlement by entry of a new judgment, which is

section 664.6's only remedy. By resort to section 664.6, Mueller was not attempting to renew, enforce, or even compel satisfaction of the existing judgment. He was instead attempting to supplant it by in effect replacing it with another judgment, amounting to the substitution of a new and lesser obligation in its place. Thus, authorities concerning the renewal, enforcement, and satisfaction of an existing judgment offer nothing to promote or facilitate application of section 664.6 here.

■ Indeed, statutory authority concerning the satisfaction of judgments only confirms that a judgment debtor, like Mueller, who wishes to enforce an alleged agreement to satisfy a judgment, whether for full payment or something less than that, is not without a remedy. But it is not section 664.6. Section 724.050, subdivision (d), specifically provides a noticed motion procedure to compel a judgment creditor to furnish an acknowledgement of satisfaction of judgment through which a trial court may determine whether an agreement for full satisfaction has been reached. The statutory scheme for satisfaction of judgment (§ 724.010 et seq.), which includes this section, has been characterized as providing "only a single method for a judgment debtor to obtain an order for entry of satisfaction of judgment (other than in the case of a writ of execution) in those cases in which the judgment creditor refuses or fails to file or deliver a signed acknowledgment of satisfaction. . . . There is no other procedure [than section 724.050] authorizing a noticed motion for entry of satisfaction of judgment." (*Quintana v. Gibson* (2003) 113 Cal.App.4th 89, 94 [5 Cal.Rptr.3d 898]; see also *Wade v. Schrader* (2008) 168 Cal.App.4th 1039, 1048 [85 Cal.Rptr.3d 865] [statutory procedure for compelling satisfaction of judgment may be used to balance offsetting judgments].) Mueller's alleged settlement agreement is just the kind of agreement for which section 724.050, subdivision (d) is available—to compel the judgment creditor to furnish an acknowledgment of satisfaction of judgment based on an agreement to satisfy the judgment by payment for less than the full face amount.

■ Thus, section 664.6 was not an authorized or available procedure for Mueller to use to enforce the alleged settlement. After entry and finality of the judgment, the action no longer constituted "pending litigation" as used in the statute. Moreover, the judgment already having been entered and become final, section 664.6, with its sole remedy of entry of judgment pursuant to the settlement, was not available to enforce the alleged settlement by entry of a second judgment. That would have violated the one-final-judgment rule. The trial court therefore properly denied Mueller's motion, albeit for a different reason—the lack of a binding contract.[10]

---

[10] Having reached this conclusion, we need not address whether the trial court was correct in its determination that the parties had not reached a settlement agreement.

## DISPOSITION

The order denying Mueller's section 664.6 motion is affirmed.

Rushing, P. J., and Elia, J., concurred.