Filed 12/16/13  Marriage of Rush and McIvor CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re the Marriage of ANDREW P. RUSH and ORLA M. MCIVOR. | |
| ANDREW P. RUSH,<br><br>        Appellant,<br><br>v.<br><br>ORLA M. MCIVOR,<br><br>        Respondent. | A137829<br><br>(San Francisco City and County Super. Ct. No. FDI-10-772203) |

Andrew P. Rush appeals from an order issued after his motion for entry of judgment pursuant to an on-the-record oral settlement agreement.  (Code Civ. Proc., § 664.6.)  He contends the court erred because the order requires the disposition of real property in a manner contrary to the terms of the parties' purported settlement agreement.  He further contends the court should have entered a judgment setting forth the settlement terms as set forth on the record.  We will vacate the order.

## I.  FACTS AND PROCEDURAL HISTORY

Appellant Andrew P. Rush (Andrew) and respondent Orla M. McIvor (Orla) were married in July 1993, and separated in June 2004.[1]  Andrew filed a petition for dissolution of the marriage in May 2010, and Orla filed her response in August 2010.

---

[1] We refer to the parties by their first names for clarity, without disrespect.

1

A. *Mandatory Judicial Settlement Conference and Settlement Agreement*

The parties participated in a mandatory judicial settlement conference on October 21, 2011.  Andrew appeared in pro per, and Orla participated by telephone and was represented by counsel; Andrew's then-fiancé and current wife, Sarah Heegaard (Sarah), attended as well.  Also present were settlement masters Martin Triano and Stacey Poole.

The parties reached an agreement during the settlement conference, and Triano recited its terms on the record before the court on October 21, 2011 (October 2011 Stipulation).  Those terms—the most germane of which we italicize—were recited as follows:  (1) Andrew and Orla would work with an attorney in Ireland to resolve issues regarding jointly owned real property in Ireland, including debt secured by the property, with the court to continue jurisdiction over the matter; (2) *two properties jointly owned by the parties in San Francisco—on Dolores Street and 22nd Street—would be "sold or transferred to [Sarah] . . . on or before March 1st of 2012"*; (3) *a "balance price payment that will be made to [Orla] will be $550,000," and Sarah would agree to the jurisdiction of the court "as far as that debt"*; (4) *the parties would "work out a marital settlement agreement and judgment that will provide for the appropriate promissory note, or deed of trust, or lien"*; (5) *the "parties will cooperate, because there's an issue of what is the best way of doing the financing down the road, which is also why [the parties] are putting it over until 2012"*; (6) *interest at "the legal rate" will accrue on "that amount" ($550,000) commencing October 21, 2011*; (7) Andrew would make an advanced payment of child support in the amount of $25,000 by March 1, 2012; (8) each party would be awarded the bank accounts, savings accounts, stocks and retirement funds in his or her name; (9) each party would bear his or her own attorney fees and costs; (10) there would be a "bifurcation as to status" as of October 21, 2011; (11) spousal support was "zero," with the court retaining jurisdiction over the issue as to both parties; (12) bank accounts or moneys relevant to the property in Ireland would be accounted for and disclosed; and (13) custody and visitation with respect to the parties' child was

2

subject to the court in Ireland, with child support determined in the San Francisco court." (Italics added.)

In addition, Triano advised, the parties had agreed that his office would serve as a mediator "to help draft up the judgment and marital settlement agreement," the parties would cooperate in this regard, and his fees would be $400 per hour.

While reciting the parties' settlement terms, Triano further noted: "Our hope is to wrap everything up so there will be a judgment today, which also goes to the issue of balancing, to do bifurcation of status today. The goal is to wrap everything up in this marriage as of today." After the terms had been recited on the record, Orla's attorney added: "And the other thing I would like to say is we put this fairly complicated case together in a very short amount of time, which is terrific, and that we are going to be working with Mr. Triano to get this finalized. [¶] And I would just like to be sure this is seen as kind of the overall picture of what is going to have a lot of fine tuning in the [marital settlement agreement]."

Andrew and Orla were then sworn as witnesses, and the court asked each of them, "with respect to the terms of the agreement that will be reduced to writing in the form of a marital settlement agreement," whether they "understand and agree to those terms." Andrew and Orla each responded affirmatively. The court announced that the petition for dissolution was granted and the parties were restored to their previous single status as of that date (October 21, 2011).[2]

B. *Inability to Reduce the Settlement Terms to Writing or Implement the Terms*

The parties stipulated to change Triano's status from a mediator to a judge pro tem in December 2011, and the court made the appointment in May 2012. However, Andrew and Sarah thereafter filed a motion to remove Triano as judge pro tem pursuant to Code of Civil Procedure section 170.1. The court granted their motion in June 2012, on the ground that Triano's good faith effort to resolve the case resulted in the likelihood that he

_____

[2] A "status only judgment" was entered by the court on July 25, 2012, with a marital status termination date of July 25, 2012.

3

would become a witness as to what the parties agreed or did not agree in the settlement negotiations, and he had become too intertwined in the settlement effort to be the neutral arbiter of what the parties agreed.

The parties were unable to reduce the October 2011 Stipulation to writing, let alone perform its terms, such as the transfer of the San Francisco properties from Orla to Sarah. Andrew blamed Orla for this, contending she failed to comply with the agreement and insisted on new and different terms. Orla claimed that Andrew was at fault. At bottom, the San Francisco realty was not transferred by Orla, Orla was not paid, and no marital settlement agreement was completed.

C. *Judgment Pursuant to Code of Civil Procedure Section 664.6*

1. *Andrew's Motion for Entry of Judgment*

In August 2012, Andrew filed a motion for entry of judgment pursuant to Code of Civil Procedure section 664.6 (section 664.6). Andrew requested that the court "[e]nter judgment pursuant to the October 21, 2011 in-court oral stipulation" and "[e]nforce [the] stipulated settlement agreement, specifically the real estate transaction set forth therein."

Andrew argued that the transcript of the October 2011 Stipulation demonstrated, as required by section 664.6, that the material terms of the settlement agreement were explicitly defined, a supervising judicial officer questioned the parties regarding their understanding of those terms, and the parties expressly acknowledged their understanding of and agreement to be bound by those terms. In addition, Andrew informed the court that it had the power to resolve factual disputes related to the settlement agreement without creating new material terms to which the parties had not agreed, and asked the court to resolve the parties' disputed issues concerning the San Francisco real estate transaction. In this regard, Andrew offered to pay Orla $350,000 in exchange for her release of the deeds to the properties, paying the balance when he received the funds from his father's estate.

2. *Orla's Opposition*

Orla opposed Andrew's motion, contending that the October 2011 Stipulation was unclear, a work in progress, and uncertain as to specifics. Orla also contended that

Andrew failed to comply with the material terms of the parties' settlement agreement by, among other things, seeking to have Triano disqualified as judge pro tem and not paying Orla the $550,000 or obtaining financing in advance of the due date.

### 3. *Andrew's Reply*

In his reply, Andrew asserted that he and Sarah had obtained financing for the entire $550,000 as Orla demanded (even though the October 2011 Stipulation anticipated a note or lien securing the sum), and it was Orla who wrongfully refused to accept the payment and tender deeds to the properties. Andrew reiterated his request that the court enter judgment pursuant to the October 2011 Stipulation and enforce the settlement agreement, including the "real estate transaction set forth therein."

### 4. *Hearing and Court's Ruling*

At the hearing on Andrew's motion for entry of judgment on November 20, 2012, the parties were sworn and examined.[3]

The court issued its findings and order after hearing on December 19, 2012 (December 2012 Order). Essentially, the court directed Andrew's attorney to prepare an order "based on the transcript of October 21, 2011"—the October 2011 Stipulation that recounted the parties' settlement agreement—but it further directed the parties to list the San Francisco properties on the market for at least $1,000,000 each and place the sale proceeds in escrow, contrary to the term in the

---

[3] The record does not contain a reporter's transcript of this hearing. The "mini minutes" of the hearing reads: "Based on the testimony and review of the pleadings the Court finds good cause to order the following: 1) The 10/21/2011 Stipulation and Order shall be drafted by both [Andrew's attorney and Orla's attorney]. Exchange of Stipulation and Order shall be on 12/14/12 at 4pm and shall be submitted to the court on 12/21/12 at 4pm. [¶] The court further orders the following: 1) Both houses in the possession of Petitioner shall be put on the market on 12/28/12. 3) Based on the evidence heard today in court, the listing price shall be listed as suggested by a Realtor with expertise in the area. 4) All parties shall cooperate with the listing and sale of the two homes. 5) Upon sale of the two homes a joint Escrow account shall be opened and maintained by both [Andrew's attorney and Orla's attorney]. 6) [Orla's attorney] shall give [Andrew's attorney] three Realtor names by 12/10/12 at 4pm. [Andrew's attorney] shall make a selection by 12/14/12 at 4pm. Both properties shall be listed by 12/28/12. 7) Court reserves jurisdiction over all other issues. [Andrew's attorney] to prepare the order. Not reported."

5

October 2011 Stipulation by which Orla would relinquish her interest in the properties to Sarah for $550,000.[4]

D. *Appeal*

Andrew appealed from the December 2012 Order in February 2013, and the parties stipulated to stay the enforcement of the order for six months. The San Francisco properties apparently remain unsold.

## II. DISCUSSION

Andrew contends that, although the court was correct to the extent it granted his section 664.6 motion, the court erred because: (1) it ordered that the San Francisco properties be listed for sale on the market, which was inconsistent with the parties' settlement agreement; and (2) the court should have directed entry of judgment rather than preparation of an order. Orla counters that the appeal should be dismissed because the December 2012 Order is not appealable; in any event, she argues, the order was proper because the October 2011 Stipulation was uncertain and incapable of enforcement as a judgment.

---

[4] The court did not expressly state whether it was granting Andrew's motion, but the register of actions provides that the motion under section 664.6 was "granted per written order." The full terms of the December 2012 Order are: "1. The parties are the owners of [the two San Francisco real properties]. [¶] 2. Both real properties shall be placed on the market for sale, and the parties shall execute a listing agreement on or before December 28, 2012. [¶] 3. [Attorney for Orla] shall propose the names of three realtors to [attorney for Andrew and Sarah] on or before December 10, 2012. [Andrew and Sarah] shall select one of these three realtors and [their attorney] shall advise [Orla's attorney] of this selection on or before 4:00 p.m. on December 14, 2012. [¶] 4. The initial listing price for each of the real properties shall be set based upon the realtor's recommendation, but not to be less than $1,000,000.00 each, unless the realtor advises otherwise. [¶] 5. The proceeds from the sale of the real properties shall be placed in a two-signature interest-bearing escrow account, established by [the parties' attorneys]. These proceeds shall remain in escrow until mutual agreement of the parties or subsequent Court Order, pending the resolution of any and all claims by the parties, including but not limited to credits, reimbursements, attorneys' fees and costs, and sanctions. [¶] 6. [Attorney for Andrew and Sarah] shall prepare a proposed Findings and Order After hearing, based on the transcript of October 21, 2011, on or before December 14, 2012. The parties shall meet and confer between December 14, 2012 and December 21, 2012. If the parties do not agree to the form of that order by December 21, 2012, then each shall submit their version to the Court for decision on December 21, 2012."

6

A. *Orla's Jurisdictional Arguments*

An appeal may be taken from a final judgment that terminates the proceeding and disposes entirely of the action. (Code Civ. Proc., § 904.1, subd. (a)(1).) In addition, interim orders are appealable if they are so designated by statute. (Code Civ. Proc., § 904.1, subd. (a).) Here, the December 2012 Order does not fall within the categories of appealable orders set forth in Code of Civil Procedure section 904.1, subdivisions (a)(2)–(13).

The December 2012 Order is also not denominated a "judgment." Nevertheless, if the December 2012 Order finally determines the rights of the parties, it is the functional equivalent of a judgment and immediately appealable. (See *Swain v. California Casualty Ins. Co.* (2002) 99 Cal.App.4th 1, 6 [appellate court has power to correct language of order that would preclude review, if trial court clearly intended to dispose of the entire action between the parties]; *Viejo Bancorp, Inc. v. Wood* (1989) 217 Cal.App.3d 200, 205 [judgment after grant of § 664.6 motion was appealable because substance and effect was to finally dispose of the action]; *Corkland v. Boscoe* (1984) 156 Cal.App.3d 989, 994 [affirming minute order granting motion to compel enforcement of settlement agreement before enactment of § 664.6].) Andrew contends this describes the December 2012 Order, particularly since the register of actions indicates that his motion for judgment was *granted*, and the order required preparation of an order *based on the October 2011 Stipulation*. Orla counters that no judgment was entered, the December 2012 Order does not finally dispose of the rights of the parties, and the December 2012 Order is not final because it required the preparation of an additional order.[5]

_____

[5] Orla also points out that the denial of a motion to enforce a settlement under section 664.6 is not immediately appealable. (*Walton v. Mueller* (2009) 180 Cal.App.4th 161, 167 & fn. 6.) She urges that the court here denied Andrew's motion, because it did not enforce the provision regarding the San Francisco properties and did not enter judgment in accord with the October 2011 Stipulation. However, the court did more than merely deny the motion: it directed entry of an order based on the October 2011 Stipulation and further ordered disposition of the San Francisco properties in a manner that was not set forth in the October 2011 Stipulation and—as far as the record on appeal shows—was not even proposed by the parties.

Alternatively, Andrew contends the December 2012 Order is appealable under the collateral order doctrine. Under this doctrine, an order is appealable if it (1) finally determines a distinct issue in a case and (2) directs the payment of money or performance of an act by or against the appellant. (*In re Marriage of Skelley* (1976) 18 Cal. 3d 365, 368 [order reducing temporary spousal support and denying attorney fees and costs was appealable, since it was akin to a final judgment in an independent proceeding].) An issue is distinct or collateral if it is separate from the general subject matter of the litigation and not important or essential to a correct determination of the main issue in the case. (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 561–562 [temporary custody and visitation orders not appealable because custody was the only disputed issue in the case].) Andrew contends the December 2012 Order satisfies these requirements, because it determines the distinct question of the disposition of the San Francisco properties and directed the acts of listing and selling the properties to a third party. Orla contends the collateral order rule does not apply because the disposition of the San Francisco properties is not a collateral matter, but vital to the main issues of the case.

Even if the December 2012 Order is not appealable as a judgment or collateral order, we would exercise our discretion to consider the appeal as a petition for a writ of mandate. (*Olson v. Cory* (1983) 35 Cal.3d 390, 400–401.) The record sufficiently demonstrates the unusual circumstances and lack of adequate legal remedy requisite for the exercise of such discretion: to require the parties to wait for a determination of the trial court's authority to compel the market sale of the San Francisco properties would risk the irrevocable sale of the properties contrary to the parties' stipulation and in excess of the trial court's authority. Furthermore, the parties have already fully briefed the issues in this proceeding, and there is no contention that the parties ever agreed to what the trial court did. We therefore proceed to the merits.

B. *Merits*

Section 664.6 provides a summary procedure "for entry of judgment enforcing a settlement agreement." (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 911 (*Assemi*).) The statute provides: "If parties to pending litigation *stipulate*, in a writing signed by the

8

parties outside the presence of the court or *orally before the court, for settlement of the case, or part thereof*, the court, upon motion, may *enter judgment pursuant to the terms of the settlement*. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." (§ 664.6, italics added.)

Section 664.6 provides a mechanism to prevent a party from reneging on a settlement, by allowing the other party to obtain a judgment and enforce it. (*Assemi, supra*, 7 Cal.4th at p. 910 [recognizing that "[d]uring the passage of time before an oral stipulation is reduced to written form, the opportunity would arise for the parties to reconsider and renege on the settlement"].) This promotes California's strong public policy favoring settlement of litigation. (*See, e.g., Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1359–1360 (*Osumi*).)

When acting on a section 664.6 motion, the court must determine whether the parties entered into a valid and binding settlement of all or part of the case. (*Assemi, supra,* 7 Cal.4th at p. 905.) In making this determination, the court should consider whether the transcript of the oral stipulation and any other evidence shows that the material terms of the settlement were explicitly defined, the supervising judicial officer questioned the parties regarding their understanding of those terms, and the parties acknowledged their understanding of and agreement to those terms. (*Id*. at p. 911.)

Depending on this determination, the court has two choices. "If the court determines that the parties entered into an enforceable settlement, it should grant the [section 664.6] motion and enter a formal judgment pursuant to the terms of the settlement. [Citation.]" (*Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1182–1183.) See *Osumi, supra,* 151 Cal.App.4th at pp. 1360–1361 [where parties' settlement agreement provided that property would be sold by certain date, but parties failed to complete the sale by that date, trial court did not impermissibly create a material term or otherwise err by extending the closing date for the transaction in response to a § 664.6 motion].) If, on the other hand, it finds that the parties did not enter into an enforceable settlement, the court must deny the motion; it cannot impose new terms in order to make the settlement

9

enforceable. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810 (*Weddington*).)

Thus, "[t]he power of the trial court under [section 664.6] is extremely limited. 'Although a judge hearing a section 664.6 motion may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment [citations], nothing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon.' " (*Hernandez v. Board of Education* (2004) 126 Cal.App.4th 1161, 1176, quoting *Weddington, supra,* 60 Cal.App.4th at p. 810.)

*Weddington* is instructive in this regard. There, the parties had entered into a one-page memorandum of settlement terms after an initial mediation. The negotiations continued without a final agreement on certain other material terms. (*Weddington, supra*, 60 Cal.App.4th at pp. 796–797.) The trial court granted a section 664.6 motion, effectively transforming "a one page memorandum which appellants signed after the initial mediation session [into] a thirty-five page judgment containing numerous material terms to which appellant had never agreed." (*Id.* at p. 797.) The appellate court reversed: "Section 664.6 authorizes none of this. Neither a mediator nor a judge may select and impose settlement terms on the authority of section 664.6." (*Ibid.*) Furthermore, because the one-page memorandum of terms was insufficient to constitute an enforceable agreement, the section 664.6 motion should have been denied. (*Id.* at pp. 810–811, 819; see *Terry v. Conlan* (2005) 131 Cal.App.4th 1445, 1458–1461 [agreement on goals of settlement, but not the means of achieving those goals, did not result in judicially enforceable settlement agreement].)

1. *The Trial Court Improperly Imposed New Terms*

The October 2011 Stipulation provided that the San Francisco properties would be transferred to Sarah, and Orla would receive $550,000. By contrast, the December 2012 Order directs that the San Francisco properties be put on the market and sold, for over $1,000,000 each, with the proceeds deposited into a joint escrow. No substantial evidence in the record supports a conclusion that the parties had agreed to this new

10

disposition. Accordingly, the court did not merely decide the terms to which the parties agreed, but exceeded its authority by imposing new and different terms. (*Weddington, supra,* 60 Cal.App.4th at pp. 809–810.)

### 2. *Whether the October 2011 Stipulation Was Sufficiently Certain*

While it is clear that the court exceeded its authority by changing the terms with respect to the transfer of the San Francisco properties, the issue remains whether the court should have granted Andrew's motion—and entered judgment based on the October 2011 Stipulation—or denied the motion. The resolution of this issue depends on whether the terms of the October 2011 Stipulation were sufficient in themselves to constitute a valid and binding settlement.

Orla argues that the October 2011 Stipulation was too preliminary or uncertain to be enforced as a settlement, particularly since the October 2011 Stipulation provided that the parties would agree on a marital settlement agreement. In addition, she urges, the October 2011 Stipulation did not clearly specify that Andrew (or Sarah) could pay Orla less than the entire $550,000 by the March 2012 transfer date, and even if he could, it was unclear what portion of the $550,000 would have to be paid by that date. Orla also notes that the court, in previously removing Triano as judge pro tem, noted that the October 2011 Stipulation was not a detailed recitation of the terms the parties had agreed upon, and Triano's task was to help finalize the parties' agreement.

Andrew, on the other hand, urges that the October 2011 Stipulation was sufficiently certain for enforcement: the absence of a completed marital settlement agreement does not preclude enforcement of the oral settlement recited on the record (see *Elyaoudayan v. Hoffman* (2003) 104 Cal.App.4th 1421, 1429–1430); the reference in the October 2011 Stipulation to a note, deed of trust, or lien shows that the parties contemplated a partial payment of the $550,000; and it was sufficient for the October 2011 Stipulation to provide that the parties would cooperate to reach agreement on certain details of the transaction.

It is for the trial court to decide, in the first instance, whether the October 2011 Stipulation was sufficiently certain to constitute an enforceable agreement for purposes of

11

section 664.6. Based on the record presented to us, it is not clear whether the trial court made this determination. On the one hand, the court did not state that the October 2011 Stipulation was uncertain or unenforceable; to the contrary, it directed Andrew to prepare a new order *based* on the October 2011 Stipulation. Furthermore, the court did not state that it found the particular provisions regarding the San Francisco properties to be uncertain or unenforceable. On the other hand, the fact that the court changed the manner in which the parties would dispose of the San Francisco properties warrants consideration. It is possible, we suppose, that the court found the terms relating to the transfer of the San Francisco properties uncertain, and came up with the idea of selling the properties on the market to cure that uncertainty. Alternatively, the court could have found the terms of the October 2011 Stipulation sufficiently certain and complete, but imposed the idea of selling the San Francisco properties on the market to resolve the parties' impasse and bickering in implementing those terms.

What *is* clear from the December 2012 Order is that the well-intentioned trial court had no authority to mandate the market sale of the San Francisco properties, in the context presented to it, based on the record before us. Accordingly, we will vacate the December 2012 Order and remand for the court to rule on Andrew's section 664.6 motion consistent with this opinion.

## III. DISPOSITION

The order dated December 19, 2012, is vacated. The matter is remanded for the trial court to rule on appellant's Code of Civil Procedure section 664.6 motion, consistent with this opinion. Appellant shall recover his costs on appeal.

12

_____

NEEDHAM, J.

We concur.

_____

SIMONS, Acting P. J.

_____

BRUINIERS, J.